Commonwealth, Appellant, *v.* Bennett.

Argued January 22, 1970. Before BELL, C. J., JONES, COHEN, EAGEN, O'BRIEN, ROBERTS and POMEROY, JJ.

*James D. Crawford,* Assistant District Attorney, with him *Richard A. Sprague,* First Assistant District Attorney, and *Arlen Specter,* District Attorney, for Commonwealth, appellant.

*Joseph Alessandroni, Jr.,* with him *Charles L. Guerin, Jr.,* for appellee.

OPINION BY MR. JUSTICE EAGEN, April 28, 1970:

On April 5, 1967, the appellee, Fred T. Bennett, was convicted by a jury in Philadelphia of murder in the first degree, and punishment was fixed at life imprisonment. Subsequently, the court en banc ordered a new trial. The Commonwealth appealed. We affirm.

On March 31, 1966, Richard Gilliam was found in the vestibule of his home shot to death. On May 25th,

in the course of an investigation into the homicide, the police questioned Bennett at his place of employment. On the following day, Bennett was asked to come to police headquarters, which he did. While there, he was questioned as to whether or not he had been in the neighborhood of the Gilliam home on the night the crime was committed, and he gave conflicting answers. Bennett was then asked to subject himself to a polygraph test, to which he assented. But, since the polygraph machine was not then available, Bennett was informed by the police that he could leave and that he would be provided with transportation to police headquarters at a later date.

On May 31, 1966, Bennett was picked up by the police and escorted to police headquarters.[1] He was questioned from about 12:15 p.m. to 2 p.m., at which time he agreed to take a polygraph test and signed a consent form. During this test, the following questions, among others, were asked: "Did you yourself shoot Gilliam? Regarding the shooting of Richard Gilliam, were you one of the men who did that shooting? Were you there to see this happen? Do you know for sure who did shoot him?"

After reviewing the results of the test, the administering officer concluded that Bennett was not truthful in his answers. This officer then proceeded, for the first time, to inform Bennett of his rights pursuant to the formula mandated by *Miranda v. Arizona*, 384 U.S. 436, 86 S. Ct. 1602 (1966). However, he failed to include in these warnings the fact that if Bennett could not afford to have a lawyer present during the questioning, one would be supplied free of charge.

This officer then accused Bennett of lying and of being one of the men "directly involved in this shoot-

---

[1] One of the officers, who escorted Bennett to police headquarters, testified that at the time: "Mr. Bennett was shaking to the point his pants appeared to be shaking on his legs."

ing." Bennett denied these accusations at first, but subsequently admitted his complicity in the crime and detailed his version of the occurrence. Shortly thereafter, another officer arrived on the scene and, after being apprised of Bennett's admissions, he began to question Bennett, and also secured incriminating admissions. Before this particular questioning began, the interrogating officer also attempted to advise Bennett of his "Miranda Rights," but he too failed to inform Bennett of his right to the assistance of free counsel during the questioning.

About an hour later, a third police officer questioned Bennett, and a formal confession was secured and recorded. Before this particular questioning began, Bennett was informed of all of his rights mandated by *Miranda*.

Pre-trial, Bennett filed a timely motion to suppress all evidence of his oral admissions and written confession, secured as before related. The motion was denied, and at trial this evidence was introduced by the Commonwealth to establish Bennett's guilt. The court en banc below awarded a new trial, ruling that the trial use of this evidence was error and proscribed by pertinent decisions of this Court and of the Supreme Court of the United States.

From the foregoing factual summary (which is taken from the Commonwealth's own trial testimony), the following salient facts stand out: (1) that Bennett was given a polygraph test, which included the submission of questions of an accusatorial nature, before he was informed of any of his constitutional rights, including his right to remain silent; (2) that Bennett was questioned by two police officers and made incriminating admissions, immediately subsequent to the completion of the polygraph test, without being given all of the warnings mandated by *Miranda*.

As to the questioning during the polygraph test, the Commonwealth urges that warnings of constitutional rights were not then required because Bennett was not yet in custody or even suspected of being involved in the crime, but was merely being interviewed as a possible witness. Such a position, we cannot accept. It is belied by the facts, is totally unrealistic and constitutes an attempt to have us submerge our intelligence and look at the situation through rose-colored glasses. The situation presented is akin to that present in *Commonwealth v. Sites,* 427 Pa. 486, 235 A. 2d 387 (1967), and is controlled by that decision.

We therefore rule that, under the circumstances, it was absolutely essential, before the questioning began during the polygraph test, that Bennett be given a full warning of his constitutional rights, and since he was not, the evidentiary use of any facts secured through such questioning or any subsequent questioning, tainted by the original illegality, was constitutionally proscribed.

The following standards enunciated in *Miranda* are applicable: "To summarize, we hold that when an individual is taken into custody or otherwise deprived of his freedom by the authorities in any significant way and is subjected to questioning, the privilege against self-incrimination is jeopardized. Procedural safeguards must be employed to protect the privilege and unless other fully effective means are adopted to notify the person of his right to silence and to assure that the exercise of the right will be scrupulously honored, the following measures are required. He must be warned *prior to any questioning* that he has the right to remain silent, that anything he says can be used against him in a court of law, that he has the right to *the presence* of an attorney, and that if he cannot afford an attorney one will be appointed for him prior to any questioning if he so desires. Opportunity to

exercise these rights must be afforded to him throughout the interrogation. After such warnings have been given, and such opportunity afforded him, the individual may knowingly and intelligently waive these rights and agree to answer questions or make a statement. But unless and until such warnings and waiver are demonstrated by the prosecution at trial, no evidence obtained as a result of interrogation can be used against him." 384 U.S. at 478-79, 86 S. Ct. at 1630 (Emphasis added.)

In view of our conclusions, stated before, only one remaining argument of the Commonwealth need be mentioned. It is this.

The Congress of the United States enacted (effective June 19, 1968) the Omnibus Crime Control and Safe Streets Act, P. L. 90-351, Title II, 82 Stat. 210, 18 U.S.C. §3501. The Commonwealth urges that the provisions of this act be applied in this case in determining the admissibility of Bennett's admissions and confession. The Congressional enactment involved expressly relates only to a "criminal prosecution brought by the United States or by the District of Columbia." Moreover, the trial in the instant case was concluded before the enactment became effective.

Order affirmed.