STATE of Iowa, Appellee,

v.

William Arnold MOON, Appellant.

No. 54278.

Supreme Court of Iowa.

Feb. 9, 1971.

Paul H. Kinion and Thomas L. Koehler, Cedar Rapids, for appellant.

Richard C. Turner, Atty. Gen., Max A. Gors, Michael J. Laughlin, and G. Douglas Essy, Asst. Attys. Gen., and Robert Jensen, County Atty., for appellee.

RAWLINGS, Justice.

Charged by county attorney's information with aggravated robbery, defendant entered a not guilty plea. Trial jury found him guilty of robbery, an included offense. From judgment accordingly entered, he appeals. We reverse.

About 7:00 A.M., November 6, 1969, Moon was arrested by Cedar Rapids officers for a robbery committed in Iowa City the preceding night. At time of apprehension he was given what is commonly referred to as the Miranda warnings and soon thereafter transported to the county jail in Iowa City. The same day defendant was there arraigned in the police court and again advised of his rights. An attorney was then appointed to represent the accused.

At approximately 6:30 that evening, a Cedar Rapids officer, Detective Schultz, visited defendant in the Iowa City Jail for the express purpose of questioning him with regard to some Cedar Rapids crimes, not related to that for which he was incarcerated. After first reading to Moon the Miranda warnings, and having defendant then read them aloud, the officer told defendant he need say nothing before consulting a lawyer. Schultz was then unaware of the fact an attorney had already been appointed.

Defendant testified he expressed a desire to confer with his lawyer but knew neither the name nor telephone number of appointed counsel. There is also testimony by Moon that Schultz was asked to confer with the county attorney about dropping charges against defendant's girlfriend if he confessed some crimes, and the officer stated he could but would make no promises. There is other evidence to the effect Schultz told Moon, if he confessed the police could· send a letter to the judge recommending leniency. All this is denied by Schultz.

Without question the officer was told by Moon, he understood his privileges and thereupon signed a waiver of rights, including benefit of counsel. This done, Schultz proceeded with his interrogation relative to the aforesaid unrelated offenses, with no apparent success in that direction.

Moon, however, started talking about the crime for which he had been arrested. Schultz was not familiar with that matter so he called Iowa City Detective Snider, then started to put defendant's oral statements in writing. This written instrument had not been completed when Snider arrived.

Defendant read aloud the prepared statement, including an additional waiver of rights, and was told he need not sign it.

Snider, being aware of the fact an attorney had been appointed to represent Moon, so advised Detective Schultz.

Pursuant to Snider's suggestion, another waiver of counsel was prepared, read to, and signed by defendant. With that done the Iowa City detective directed several questions to Moon regarding waiver by him of right to presence of his attorney during the Schultz interview. About that time defendant said he would like to consult counsel before signing the prepared statement. No assistance was accorded him in connection therewith. In fact Snider stated, "Well you baked your cake and it doesn't really matter whether you sign this statement or not. That's entirely up to you. * * * The only reason that would have any indication of signing the statement would be to put a little more frosting on the cake." The written confession was thereupon signed.

An examination of the record further discloses, defendant admitted being in the house when the claimed offense was committed, but maintains he was present, with others, for the purpose of buying some hashish and marijuana. There is additional testimony connecting this accused with the crime here involved.

Defendant's pretrial motion to suppress his confession was overruled.

In course of trial no attempt was made to introduce in evidence the oral statements made by Moon to Officer Schultz. Rather, the State relied entirely upon the written confession, admitted over timely and proper objections.

These adverse rulings constitute the sole error relied on by defendant for a reversal.

More specifically it is contended, trial court erred in overruling defendant's motion to suppress on the ground it was obtained at a time he was represented by, and without notice to or presence of counsel, thereby denying defendant right to effective assistance of his attorney as defined by the Sixth Amendment to the United States Constitution, made applicable to the States by the Fourteenth Amendment.

I. At the outset it is apparent defendant premises the foregoing assignment upon alleged denial of effective assistance of counsel, rather than deprivation of right to counsel. While the two concepts are related and the latter encompasses the former, they are basically severable.

Right to counsel by an accused is per se the unrestricted right of access to an attorney with attendant benefit of his advice and assistance. See Escobedo v. Illinois, 378 U.S. 478, 490–491, 84 S.Ct. 1758, 1765, 12 L.Ed.2d 977. As pointed out in Miranda v. Arizona, 384 U.S. 436, 465–466, 469–470, 86 S.Ct. 1602, 1623, 1625–1626, 16 L.Ed.2d 694, the foregoing is one of the procedural safeguards provided in order to protect a suspect against deprivation of basic rights, specifically with regard to self-incrimination. See also Coleman v. Alabama, 399 U.S. 1, 90 S.Ct. 1999, 2002, 26 L.Ed.2d 387; Gideon v. Wainwright, 372 U.S. 335, 83 S.Ct. 792, 9 L.Ed.2d 799; Douglas v. California, 372 U.S. 353, 83 S.Ct. 814, 9 L.Ed.2d 811; Powell v. Alabama, 287 U.S. 45, 53 S.Ct. 55, 77 L.Ed. 158; Wright v. Denato, 178 N.W.2d 339 (Iowa). See generally ABA Standards Relating to Providing Defense Counsel, Approved Draft (1968); 21 Am.Jur.2d, Criminal Law, § 312.

On the other hand, right to effective assistance of counsel denotes the right of a suspect to benefit of effective legal representation, usually measured by fair trial standards, which necessarily presupposes the foregoing right to counsel. Ordinarily it involves the matter of counsel's competency. See McMann v. Richardson, 397 U.S. 759, 90 S.Ct. 1441, 1449, 25 L.Ed. 2d 763; State v. Cooper, 180 N.W.2d 424, 426–427 (Iowa); State v. Kendall, 167 N. W.2d 909, 910–911 (Iowa); Blanchard v. Brewer, 429 F.2d 89, 90 (8 Cir.); Scott v. United States, 138 U.S.App.D.C. 339, 427 F.2d 609; 14 So.Dak.L.Rev. 287.

We are satisfied defendant instantly alludes to claimed denial of right to advice of counsel, and his assignment is so entertained.

II. That, in turn, poses a question relative to admissibility in evidence of Exhibit 8, being the written instrument signed by defendant in the presence of Schultz and Snider.

As heretofore disclosed, there is a material discrepancy in the evidence as to when defendant first voiced any desire to consult with his appointed attorney.

■ If, prior to expression of any inculpatory statements, absent effective waiver, the accused expressed a wish to confer with counsel, nothing thereafter said by defendant would be admissible in evidence. *Miranda, supra.* See also Escobedo v. Illinois, *supra*; Mathis v. United States, 391 U.S. 1, 88 S.Ct. 1503, 20 L.Ed.2d 381.

Under these circumstances we review the record anew in order to determine the voluntariness of Moon's statements to Detective Schultz, and written confession later signed. Greenwald v. Wisconsin, 390 U.S. 519, 520–521, 88 S.Ct. 1152, 1153–1154, 20 L.Ed.2d 77; The Code 1966, Section 793.18.

It is thus revealed that first on arrest, and later in course of arraignment, the Miranda warnings were given defendant. Additionally, and within a limited period of time thereafter, Officer Schultz read the Miranda warnings to Moon, then had him restate them aloud, after which the latter signed a waiver of rights, including advice of counsel.

■ In light of these and other attendant factors, heretofore set forth, absent any persuasive showing to the contrary, it is to us apparent that Moon, being first fully advised as to all his rights, specifically waived right to advice of an attorney immediately prior to and within the period of time during which he made the oral statements to Detective Schultz. See *Miranda, supra* at 384 U.S. 475, 86 S.Ct. 1602.

But, since no attempt was ever made by the State to offer those oral statements in evidence, the foregoing is not alone determinative.

III. Defendant argues, any confession by him was still inadmissible in evidence because there could be no intelligent and voluntary benefit of counsel waiver absent advice of his attorney in that regard.

So the problem presently to be resolved is whether an accused, in custody, must be constitutionally accorded benefit of his attorney's advice as a condition precedent to a knowing and intelligent waiver of right to counsel.

■ Inceptionally it is understood, there can be no presumption of waiver regarding right to assistance of an attorney. *Miranda, supra* at 384 U.S. 475, 86 S.Ct. 1602. And when admissibility of inculpatory statements, made absent counsel, is placed in question there is imposed on the State the heavy burden of proving an effective waiver. See *Miranda, supra,* 384 U.S. 475, 86 S.Ct. 1602; Jackson v. Denno, 378 U.S. 368, 377–379, 84 S.Ct. 1774, 1781–1782, 12 L.Ed.2d 908. See also United States v. Smith, 379 F.2d 628, 633 (7 Cir.);

State v. Holland, 258 Iowa 206, 214, 216, 138 N.W.2d 86; State v. Johns, 185 Neb. 590, 177 N.W.2d 580, 585–588.

On the other hand, the court squarely held in *Miranda* at 384 U.S. 444–445, 475–476, 479, 86 S.Ct. 1602, a suspect can at any time waive right to counsel. All apparently required in this direction is that the waiver be voluntarily, knowingly and intelligently exercised. *Miranda, supra* at 384 U.S. 444, 479, 86 S.Ct. 1602.

In support of his position defendant leans heavily on Massiah v. United States, 377 U.S. 201, 84 S.Ct. 1199, 12 L.Ed.2d 246. There, after indictment and known retention of counsel, peace officers secured the assistance of Massiah's accomplice. Resultantly an electronic transmitting device was surreptitiously placed in the cohort's automobile. Federal agents thus later overheard conversations between defendant, out on bail, and the cooperating party. Incriminatory statements then made by the accused were introduced at trial. Referring to Spano v. New York, 360 U.S. 315, 79 S.Ct. 1202, 3 L.Ed.2d 1265, as precedent, and People v. Waterman, 9 N.Y.2d 561, 216 N.Y.S.2d 70, 175 N.E.2d 445, holding counsel must be present during any post-indictment interrogation, the court concluded Massiah's secretly obtained statements were unconstitutionally admitted in evidence.

Incidentally, *Spano, supra,* holds that where a defendant's will has been overborne by official pressure, fatigue and false sympathy in an after indictment setting, any confession thus obtained is inadmissible.

So it is evident neither *Massiah* nor *Spano,* both *supra,* can be factually likened to the case at bar.

Moreover, *Massiah* must be read in light of *Miranda* which gives validity to a knowing and voluntary waiver of rights during the critical stage of a custodial interrogation.

It is to us apparent the persuasive factor involved in *Massiah* was the stealthy acquisition of information from an accused by officials clearly excluding any possible effective waiver of right to assistance of counsel at a time when that right was unquestionably vested.

No showing is instantly made which discloses stealth, surreptitious conduct, subterfuge or subtle inducement attended the oral questioning of Moon by Detective Schultz.

■ As in State v. Williams, 182 N.W. 2d 396 (Iowa), opinion filed December 15, 1970, we now reject the theory advanced by defendant to the effect, advice of his attorney was essential to an effective waiver of counsel.

■ IV. Under all the circumstances heretofore disclosed it is to us evident the State successfully carried its burden of proving Moon knowingly, intelligently and voluntarily waived right to advice of his attorney prior to and within the period of time during which he may have vocally incriminated himself.

From this it follows, the oral statements by defendant to Schultz, made prior to the former's request for counsel, just before the written instrument was signed, would not have been vulnerable to any absence of voluntariness objection if, on proper foundation, they had been offered in evidence. In support of this conclusion see also United States v. Crisp, 435 F.2d 354 (7 Cir.), opinion issued November 11, 1970; United States v. Osterburg, 423 F.2d 704 (9 Cir.), cert. denied 399 U.S. 914, 90 S.Ct. 2216, 26 L.Ed.2d 571; United States v. Montos, 421 F.2d 215 (5 Cir.), cert. denied 397 U.S. 1022, 90 S.Ct. 1262, 25 L.Ed.2d 532; United States v. Fellabaum, 408 F.2d 220 (7 Cir.); Coughlan v. United States, 391 F.2d 371 (9 Cir.); State v. Kendrick, 173 N.W.2d 560, 562 (Iowa). See generally State v. Holland, 258 Iowa 206, 138 N.W.2d 86.

It is of course understood, in the face of a silent record, we cannot speculate upon what may have been said by Moon to Schultz in the course of any oral discussion. See Boykin v. Alabama, 395 U.S. 238, 242, 89 S.Ct. 1709, 1712, 23 L.Ed.2d 274.

V. As heretofore revealed, defendant, after having orally voiced some statements, either incriminatory or exculpatory, unquestionably expressed a desire to confer with counsel before signing any written confession. Then came Officer Snider's not so subtle, but successfully employed "frosting on the cake" comments, after which Moon signed the written instrument. See Blackburn v. Alabama, 361 U.S. 199, 80 S.Ct. 274, 4 L.Ed.2d 242; Palmer v. Peyton, 359 F.2d 199, 202 (4 Cir.).

Here again *Miranda* also comes into play. There, at 384 U.S. 444-445, 86 S.Ct. 1612, the court said:

"Prior to any questioning, the person must be warned that he has a right to remain silent, that any statement he does make may be used as evidence against him, and that he has a right to the presence of an attorney, either retained or appointed. The defendant may waive effectuation of these rights, provided the waiver is made voluntarily, knowingly and intelligently. If, however, he indicates in any manner and *at any stage of the process* that he wishes to consult with an attorney before speaking there can be no questioning. Likewise, if the individual is alone and indicates in any manner that he does not wish to be interrogated, the police may not question him. The mere fact that he may have answered some questions or volunteered some statements on his own does not deprive him of the right to refrain from answering any further inquiries until he has consulted with an attorney and thereafter consents to be questioned." (Emphasis supplied).

That concise declaration of principle is later pertinently explicated at 384 U.S. 473–476, 86 S.Ct. 1627, by these statements:

"Once warnings have been given, the subsequent procedure is clear. If the individual indicates in any manner, at any time prior to or during questioning, that he wishes to remain silent, the interrogation must cease. At this point he has shown that he intends to exercise his Fifth Amendment privilege; *any statement taken after the person invokes his privilege cannot be other than the product of compulsion, subtle or otherwise.*

"\* \* \*

"But a valid waiver will not be presumed simply from the silence of the accused after warnings are given or simply from the fact that a confession was in fact eventually obtained.

"\* \* \*

"Moreover, where in-custody interrogation is involved, there is no room for the contention that the privilege is waived if the individual answers some questions or gives some information on his own prior to invoking his right to remain silent when interrogated.

"\* \* \*

"Moreover, any evidence that the accused was threatened, *tricked, or cajoled* into a waiver will, of course, show that the defendant did not voluntarily waive his privilege. \* \* \*.

"The warnings required and the waiver necessary in accordance with our opinion today are, in the absence of a fully effective equivalent, prerequisites to the admissibility of any statement made by a defendant. No distinction can be drawn between statements which are direct confessions and statements which amount to 'admissions' of part or all of an offense. The privilege against self-incrimination protects the individual from being compelled to incriminate himself *in any man-*

*ner*; it does not distinguish degrees of incrimination." (Emphasis supplied).

■ From the foregoing it becomes evident that whenever an in-custody accused in any manner or at any time invokes his right to counsel, any questions thereafter asked of, or statements made to him which are likely to, expected to, or do in fact elicit a confession, including the affixing of his signature to any inculpatory or exculpatory written document, constitute a part of the Miranda proscribed interrogation process.

See generally United States v. Priest, 409 F.2d 491, 493 (5 Cir.); People v. Randall, 1 Cal.3d 948, 83 Cal.Rptr. 658, 464 P.2d 114, 118; Commonwealth v. Simala, 434 Pa. 219, 252 A.2d 575, 578–579.

■ It is thus amply demonstrated, the written statement which defendant was induced to sign, after having undeniably expressed a desire to consult with his attorney before signing, was erroneously admitted in evidence.

The State may, however, retry defendant without use of the tainted evidence. Orozco v. Texas, 394 U.S. 324, 327 n. 4, 89 S.Ct. 1095, 1097 n. 4, 22 L.Ed.2d 311.

VI. Briefly stated we have here, (1) defendant's initial voluntary waiver of right to counsel, (2) his subsequent oral incriminatory or exculpatory statements, not offered in evidence, followed by, (3) an ignored specific request by accused for benefit of his attorney's advice prior to signing a written confession, (4) the resultant securing of that confession under constitutionally proscribed conditions, and (5) erroneous admission in evidence of the poisoned document. Under these circumstances this case is both in fact and law distinguishable from State v. Williams, 182 N.W.2d 396 (Iowa), opinion filed December 15, 1970.

Defendant's new trial motion should have been sustained.

Reversed and remanded for a new trial.

MASON, BECKER and UHLENHOPP, JJ., concur.

LARSON, J., concurs in result.

STUART, J., MOORE, C. J., and Le-GRAND, J., dissent.

REES, J., takes no part.

STUART, Justice (dissenting).

I respectfully dissent from the majority opinion. I cannot reconcile this result with that reached in State v. Williams, 182 N.W.2d 396, filed December 15, 1970. In my opinion the totality of the circumstances required a reversal there but support an affirmance here, contrary to the result reached by the majority in both cases.

In Williams the officer admittedly embarked on a campaign to obtain as much information as possible without direct questioning from an uneducated escapee from a mental institution in the face of an agreement with defense counsel to bring defendant to Des Moines before interrogating him.

If an affirmance was justified there, it is certainly proper here. This defendant is of at least normal intelligence. He was repeatedly advised of his constitutional rights including the right to counsel. The majority correctly found he waived these rights prior to making oral statements. After these statements were reduced to writing and presented to defendant, he stated he would like to talk to his counsel before signing. No more information was obtained from defendant. Almost immediately after requesting counsel he signed the statement without having conferred with him.

We have held that a defendant who has exercised his right to remain silent and have counsel present may reconsider and change his mind. State v. McClelland (Iowa 1969), 164 N.W.2d 189, 193. In my opinion defendant waived his right to counsel a second time and voluntarily signed the confession.

I am unwilling to hold under all the circumstances here that the officer's statement to this defendant: "Well, you baked your cake and it doesn't matter whether you sign this statement or not. That's entirely up to you. It just gives a little more frosting on the cake if you want to sign this statement.", makes the waiver of his right to counsel involuntary.

MOORE, C. J., and LeGRAND, J., join in this dissent.