STATE of Iowa, Petitioner,

v.

Bennett **CULLISON**, Chief Judge of the Fourth Judicial District of Iowa, and Jean Ann Albertsen, Respondents.

No. 2–56603.

Supreme Court of Iowa.

Feb. 20, 1974.

Lyle A. Rodenburg, County Atty., Council Bluffs, for petitioner.

Peters, Campbell & Pearson, Council Bluffs, for respondents.

Heard by MOORE, C. J., and MASON, LeGRAND, REES and UHLENHOPP, JJ.

REES, Justice.

This is an original action in certiorari to review the ruling of the respondent judge sustaining a motion to suppress on Fifth Amendment grounds certain inculpatory admissions made by Jean Ann Albertsen, who was charged by county attorney's information with the crime of murder in violation of § 690.1, The Code, 1973.

On March 17, 1973 the body of a male infant was found in a garbage bag in a public park in the city of Council Bluffs. The finding of the body was given wide publicity in the press, and all of the personnel of the Council Bluffs police department were alerted to receive leads or clues in reference to any woman known to have been recently pregnant who could not account for newborn child.

On March 20, 1973 Assistant County Attorney Richter received confidential information from a juvenile officer that a young woman named Jean, who was employed at a nursing home in Council Bluffs, had appeared to be in a condition of advanced pregnancy but had taken a leave of absence from her work for three days and when she returned to work appeared to be no longer pregnant. Richter's inquiry at the nursing home resulted in the woman being identified as Jean Ann Albertsen, who was married and lived in Council Bluffs. On the evening of March 20 officers Williams and Mitchell went to Mrs. Albertsen's home and advised her they were investigating the matter and had heard a rumor she had been pregnant. No warnings similar to what are now referred to as the "Miranda warnings" were given Mrs. Albertsen, and she stoutly denied any

pregnancy. The following day other persons were interviewed and confirmed to the officers that Mrs. Albertsen had apparently been pregnant.

On March 22 the officers arranged to have Mrs. Albertsen's car stopped by a traffic officer after she left work, and she was asked if she would go to the police station to discuss the matter with the police. She consented and drove her own automobile to the station, and was interviewed in the office of the chief of police by Officers Mitchell and Williams and Assistant County Attorney Richter. The officers and Richter testified that the assistant county attorney then advised Mrs. Albertsen of her "Miranda" rights after they had preliminarily advised her that they had secured further information and opinions of others regarding her pregnancy. Mrs. Albertsen continued to insist that she had not been pregnant, and at that time it seems to be undisputed that Richter said to Mrs. Albertsen, "To make this simple, you should submit to either a polygraph examination or medical examination and give us the results, or in the alternative we will continue to investigate leaving no stones unturned." She left the office of the chief of police after agreeing to undergo a physical examination by a Dr. Farrage the next morning. Mrs. Albertsen testified that no "Miranda" warnings were given her in the station.

The following morning Mrs. Albertsen called the assistant county attorney, Richter, and said she had changed her mind, that she did not want to take the doctor's examination but agreed to meet Richter and the officers at the Council Bluffs police station to go with them to Omaha and take a polygraph examination. She then joined Richter and Officers Williams and Mitchell and went with them in an automobile to Omaha to the office of Mr. A. E. Clinchard, a polygraph operator. The officers testified that during the ride from Council Bluffs to Omaha Officer Williams again advised the defendant Albertsen of her constitutional rights by reading to her

a card he carried in his pocket and upon which was set out the classic "Miranda" warnings. Mrs. Albertsen denies that such warnings were ever given her during the ride from Council Bluffs to Omaha.

Mrs. Albertsen, accompanied by the assistant county attorney and the two police officers, arrived at Clinchard's office in Omaha sometime between 12:30 and 12:45 p. m. on March 23, 1973. Clinchard was a retired police officer, having served on the Omaha police force until his retirement in 1963. He graduated in 1949 from the Keller Institute in Chicago which, he testified, is recognized as a school for training polygraph operators. Upon his graduation he was accredited as a polygraph operator and worked from 1949 until 1961. His basic assignment with the Omaha police department was conducting polygraphic examinations. Following his retirement from the Omaha police force, he had been engaged basically in business as an independent polygraph examiner.

After some preliminary conversation at the time, Mrs. Albertsen was ushered into the presence of Mr. Clinchard by the assistant county attorney and the two police officers, who then left her alone with Mr. Clinchard. Mr. Clinchard testified that he then explained to the defendant the operation of the polygraph machine and went over with her briefly the questions which he had prepared to submit to her. He also submitted for her signature a release form which was introduced at the hearing on the motion to suppress, and which because of its particular relevancy to the questions before us we set out in detail:

## A. E. CLINCHARD & ASSOCIATES

City  Omaha, Neb.

Date  Mar. 23, 1973

### STATEMENT OF RELEASE

I, Jean A. Albertsen do hereby voluntarily, without threats, promises of immunity or reward, and without duress, coercion or force, do agree to take a Polygraph (lie detector) examination to be given me by an employee of A. E. CLINCHARD & ASSOCIATES, for the mutual benefit of myself and the Office of the County Attorney, Pottawattamie County, Iowa.

I do hereby declare I am, to the best of my knowledge, in good health and am not undergoing treatment for any illness, disease, mental or emotional condition.

Further, the technique to be used during the administration of the Polygraph examination has been thoroughly explained to me by A. E. Clinchard.

It is further with my voluntary consent that apparatus necessary for the conducting of this examination shall be placed upon my person, and with the full understanding that such Polygraph examination will be discontinued at anytime I request same to be discontinued.

I hereby waive any and all rights that I have or may have with reference to the taking of said Polygraph examination, and the disclosure of the results and opinions arising from the examination.

I further hereby authorize A. E. CLINCHARD & ASSOCIATES, its officers, agents or employees, to disclose both orally and in writing the results and opinions to representatives of the corporations and firms above referred to, for whatever uses they may determine.

I am fully aware that the examination results and opinions could prove to be unfavorable to me, but irregardless of same, I do hereby release and covenant to forever hold free from harm, liability or damage to me arising from said results and opinions, A. E. CLINCHARD & ASSOCIATES, together with its officers and employees, as well as the above named corporation or firm who may use said results and opinions arising from said Polygraph Examination.

I release and forever discharge all and each of the above named corporations, firms, or individuals from any and all action or cause of action, claim or demand, liability or legal actions which I have now or may ever have resulting directly or indirectly, or remotely both, from my taking of said Polygraph examination and the said results and opinions, or any oral or written reports tendered because of this examination.

In witness whereof I have hereunto set my hand and seal at 1:45 A.M. (*sic*)

/s/ A. E. Clinchard
(Witnessed by)

/s/ Jean A. Albertsen
(Signature of person examined)

At no time while Mrs. Albertsen was in the Clinchard office was she ever advised of her constitutional rights by the reciting or reading to her the classic "Miranda" warning, or in any other manner, either by Mr. Clinchard, Mr. Richter, or the two police officers.

After the release form had been signed and the preliminary questions had been gone over with Mrs. Albertsen by Mr. Clinchard, Mrs. Albertsen then admitted to Mr. Clinchard that she had been pregnant, that she had been delivered of a child, that she had not induced the birth of the child, that she had had no assistance at any time from anyone, and that she had taken the child to the park in Council Bluffs where she had disposed of the body. She also told Mr. Clinchard that she thought the baby was dead at birth.

After Mrs. Albertsen made the above statements to Clinchard, he proceeded to run the mechanical tests on the polygraph machine. Mr. Richter was called into Clinchard's office where Mrs. Albertsen made the same admissions to him in the presence of Mr. Clinchard. She was then returned to Council Bluffs and to the office of Assistant County Attorney Richter, where she was advised of her constitutional rights. She indicated she did not desire to have a lawyer with her at that time. She was subsequently charged with the crime of murder by county attorney's information and her motion to suppress was filed. Hearing was had followed by the ruling of the trial court sustaining the motion to suppress her inculpatory statements. The order for the writ of certiorari on the State's application followed.

The respondent judge prefaced his legal conclusions by a detailed findings of facts substantially as above set out. He then concluded as a matter of law that assuming arguendo the constitutionally-required warnings had been given Mrs. Albertsen during the custodial interrogation on Thursday, March 22 in the office of the chief of police and another warning given her by the detective while en route to Mr. Clinchard's office on May 23, the execution by the defendant of the "Statement of Release" which is set out above in full implies the polygraph examination was for the mutual benefit of defendant and the county attorney's office, and completely vitiates and obliterates the validity and effect of the constitutionally-required warnings theretofore given. The trial court further concluded the police authorities had represented to the defendant that the only inquiry to be made of her was whether she had been pregnant and that was the only thing into which inquiry would be made in Mr. Clinchard's office, but that Clinchard changed certain questions which he was going to propound to Mrs. Albertsen and elaborated thereon beyond the area which had previously been stated to Mrs. Albertsen. The court found that such facts, coupled with the representation to the defendant that the results of the polygraphic examination and any responses to the questions prepared by Clinchard would be to the "mutual benefit" of defendant and others, implied the statements made by her could not be used against her in any way.

The court further concluded the record establishes a psychological intimidation on

Thursday, March 22 when Mrs. Albertsen was in the office of the chief of police and was given the alternative of either submitting to a physical examination or a polygraph examination, and that such alternatives were coupled with the implication the police authorities wanted to "help" the defendant prove her innocence, and were exactly within the ambit of matters that the Miranda case and cases following it were designed to prevent.

The court further concluded as a matter of law the interrogation in Mr. Clinchard's office was of a custodial nature and any statements made by defendant to be admissible must have been preceded by the constitutionally-required warnings of the right to remain silent, the right to counsel, and the acknowledgment that any statements could and would be used against her in a court of law. The court found Mrs. Albertsen was at no time advised by Mr. Clinchard or the police authorities that the results of the polygraph examination would be inadmissible in a court of law, nor was she apprised of the fact any opinion by Mr. Clinchard would also be inadmissible.

The respondent judge thereupon ordered and decreed the inculpatory admissions made by Mrs. Albertsen to Mr. Clinchard and thereafter to Assistant County Attorney Richter on March 23 were illegally obtained in violation of the defendant's right against self-incrimination, and sustained defendant's motion to suppress evidence of such admissions. He further suppressed any statements made by defendant or any implications from said statements whether made to Clinchard or any reiteration thereof to any other police official or to Mr. Richter as "fruit of the poisoned tree" under the doctrine announced in Westover v. United States, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694.

The issues presented by the State for review can be summarized as follows:

A. The offer by the State to Mrs. Albertsen to afford her an opportunity to have a physician's examination or to take a polygraph examination to determine whether she had recently been delivered of a child was not psychological coercion or intimidation even when coupled with statements by the police that the investigation would continue unless she submitted to one of such examinations.

B. The obtaining of a statement of release from Mrs. Albertsen by the polygraph examiner without warnings to the defendant that she need make no statement to incriminate herself, did not vitiate the two previous "Miranda" warnings given by the police to Mrs. Albertsen nor did the securing of such release render her subsequent inculpatory admissions inadmissible.

C. That although defendant Albertsen was twice advised of her "Miranda" rights and subsequently made inculpatory admissions, no such "Miranda" warnings were constitutionally required, as there had been no focus on the defendant as a suspect, she was not in custody when she made the inculpatory admissions; there was no constitutionally-proscribed interrogation of the defendant when she made the voluntary statements, and the independent polygraph operator was not a state agent subject to Fourteenth Amendment constitutional standards.

■ I. The scope of our review in this original certiorari action is strictly limited. The ruling of the trial court on the motion to suppress the inculpatory statements of Mrs. Albertsen can properly be reviewed here by means of certiorari. However, we have before us law questions only, and are not now reviewing the fact questions. State v. Holliday, 169 N.W.2d 768, 770 (Iowa 1969). We do not here review the findings of fact of the trial court further than to ascertain that they are sustained by competent and substantial evidence. Only questions of law are presented. Harnack v. District Court of Woodbury County, 179 N.W.2d 356, 359 (Iowa 1970); Wright v. Denato, 178 N.W.2d 339, 340 (Iowa 1970); Powers v. McCullough, 258 Iowa 738, 741,

140 N.W.2d 378, 381; Grant v. Fritz, 201 N.W.2d 188, 199 (Iowa 1972).

Our inquiry therefore is limited to the ascertainment of whether there is substantial evidence in the record to support the trial court's ruling.

II. However stated, the sole question which was before the trial court and is now before us here is to determine whether the inculpatory statements made by Mrs. Albertsen were voluntarily made by her or whether they were the consequence of psychological intimidation or coercion, or that her will was overborne and her statements were not the product of an essentially free and unconstrained choice.

The voluntariness of a confession necessarily depends on the totality of the circumstances and cannot depend on any one factor for determination. Fikes v. State of Alabama, 352 U.S. 191, 197, 77 S. Ct. 281, 284, 1 L.Ed.2d 246; Boulden v. Holman, 394 U.S. 478, 480, 89 S.Ct. 1138, 1140, 22 L.Ed.2d 433; Schneckloth v. Bustamonte, 412 U.S. 218, 93 S.Ct. 2041, 36 L. Ed.2d 854.

The question of the admissibility of inculpatory statements without counsel present places the burden on the State to show that the admissions were made after the defendant knowingly and intelligently waived his rights, but the State need prove the confession was voluntary only by a preponderance of evidence. Miranda v. State of Ariz., 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694; State v. Fetters, 202 N. W.2d 84, 88 (Iowa 1972); State v. Moon, 183 N.W.2d 644, 648 (Iowa 1971).

An excellent exposition on the question of voluntariness and the admissibility of inculpatory statements is set out in Schneckloth v. Bustamonte, *supra,* at page 225 of 412 U.S., pp. 2045–2047 of 93 S.Ct., and is particularly applicable to the matter before us here. At page 2047 of 93 S.Ct., the court said:

" 'The ultimate test remains that which has been the only clearly established test in Anglo-American courts for two hundred years: the test of voluntariness. Is the confession the product of an essentially free and unconstrained choice by its maker? If it is, if he has willed to confess, it may be used against him. If it is not if his will has been overborne and his capacity for self-determination critically impaired, the use of his confession offends due process.' Culombe v. Connecticut, *supra,* 367 U.S. 568, at 602, 81 S.Ct. 1860, at 1879, 6 L.Ed.2d 1037.

"In determining whether a defendant's will was overborne in a particular case, the Court has assessed the totality of all the surrounding circumstances—both the characteristics of the accused and the details of the interrogation. Some of the factors taken into account have included the youth of the accused, *e. g.,* Haley v. Ohio, 332 U.S. 596, 68 S.Ct. 302, 92 L. Ed. 224; his lack of education, *e. g.,* Payne v. Arkansas, 356 U.S. 560, 78 S. Ct. 844, 2 L.Ed.2d 975; or his low intelligence *e. g.,* Fikes v. Alabama, 352 U.S. 191, 77 S.Ct. 281, 1 L.Ed.2d 246; the lack of any advice to the accused of his constitutional rights, *e. g.,* Davis v. North Carolina, 384 U.S. 737, 86 S.Ct. 1761, 16 L.Ed.2d 895; the length of detention, *e. g.,* Chambers v. Florida, *supra,* 309 U.S. 227, 60 S.Ct. 472, 84 L.Ed. 716; the repeated and prolonged nature of the questioning, *e. g.,* Ashcraft v. Tennessee, 322 U.S. 143, 64 S.Ct. 921, 88 L. Ed. 1192; and the use of physical punishment such as the deprivation of food or sleep, *e. g.,* Reck v. Pate, 367 U.S. 433, 81 S.Ct. 1541, 6 L.Ed.2d 948. In all of these cases, the Court determined the factual circumstances surrounding the confession, assessed the psychological impact on the accused, and evaluated the legal significance of how the accused reacted. Culombe v. Connecticut, *supra,* 367 U.S., at 603, 81 S.Ct., at 1879.

"The significant fact about all of these decisions is that none of them turned on

the presence or absence of a single controlling criterion; each reflected a careful scrutiny of all the surrounding circumstances. See Miranda v. Arizona, 384 U.S. 436, 508, 86 S.Ct. 1602, 1645, 16 L.Ed.2d 694 * * *; *id.,* at 534–535, 86 S.Ct., at 1659–1660 * * *. In none of them did the Court rule that the Due Process Clause required the prosecution to prove as part of its initial burden that the defendant knew he had a right to refuse to answer the questions that were put. While the state of the accused's mind, and the failure of the police to advise the accused of his rights were certainly factors to be evaluated in assessing the 'voluntariness' of an accused's responses, they were not in and of themselves determinative. See, *e. g.,* Davis v. North Carolina, *supra;* Haynes v. Washington, *supra,* 373 U.S. 503, at 510–511, 83 S.Ct. 1336, at 1341–1342, 10 L.Ed.2d 513; Culombe v. Connecticut, *supra,* 367 U.S., at 610, 81 S.Ct., at 1883; Turner v. Pennsylvania, 338 U.S. 62, 64, 69 S.Ct. 1352, 93 L.Ed. 1810."

■ There is no dispute but that at the time Mrs. Albertsen was about to submit to the polygraph test in the Clinchard office she had not been given any warnings that any statements made by her to Mr. Clinchard could be used against her. We feel trial court was correct in reaching the conclusion that the inculpatory admissions made by her in Clinchard's office, first to Clinchard and later to the assistant county attorney, Richter, were illegally obtained and in violation of the defendant's right against self-incrimination. We have taken into consideration, as did obviously the trial judge, the totality of all the circumstances. We are inclined to believe the record adequately establishes by a preponderance of the evidence that the "Miranda" warnings were given Mrs. Albertsen in the office of the chief of police and en route to Omaha by the police officers. However, the contention that the interrogation in the Clinchard office was not a "custodial interrogation" taxes our credulity. Even though Clinchard was not a po-

lice officer, he was nonetheless secured to conduct the polygraph examination by the county attorney's office and the obligation was upon him or upon someone (Richter or the two police officers) to advise Mrs. Albertsen that any statements made by her if voluntary could be used against her. The elements of voluntariness commented upon in Schneckloth v. Bustamonte, *supra,* are lacking in the factual situation before us. See also Clewis v. Texas, 386 U.S. 707, 87 S.Ct. 1338, 18 L.Ed.2d 423.

Clearly, in the absence of any showing that Mrs. Albertsen was advised as to her rights respecting self-incrimination, the statements made by her in Clinchard's office, either to Clinchard or to the prosecutor were properly suppressed. See Commonwealth v. Bennett, 439 Pa. 34, 264 A.2d 706 (1970); People v. Algien, 501 P.2d 468 (Colo.1972); Lynumn v. Illinois, 372 U.S. 528, 83 S.Ct. 917, 9 L.Ed.2d 922; cf. People v. Redden, 10 Ill.App.3d 889, 295 N.E.2d 23 (1973).

■ "It is now generally accepted that the voluntariness requirement applies to statements made to private individuals as well as those made to police officers." McCormick on Evidence, 2d ed., § 162, p. 357, and cases there cited by footnote references.

We conclude the trial court was correct in finding that the inculpatory statements made by Mrs. Albertsen were illegally obtained in violation of her right against self-incrimination, and that trial court's ruling sustaining the defendant's motion to suppress the same was correct.

We therefore annul the writ of certiorari, and dismiss the petition of the State.

Writ annulled, petition dismissed.

All Justices concur, except UHLENHOPP, J., who concurs specially.

UHLENHOPP, Justice (concurring specially).

Admissibility of Mrs. Albertsen's statements is dependent upon two separate

**316**

facts: (1) that the officers or the polygraph operator gave her the Miranda warning, and (2) that Mrs. Albertsen took the test voluntarily in fact. The evidence shows the officers gave her the Miranda warning en route to the office of the polygraph operator. That warning includes the warning that her statements could be used against her. Hence the first fact exists. The situation is different from the two cases cited by the court in which test results were held inadmissible, People v. Algien, 501 P.2d 468 (Colo.); Commonwealth v. Bennett, 439 Pa. 34, 264 A.2d 706. In those cases the Miranda warning was not given until after the polygraph test.

Notwithstanding the Miranda warning given here, however, the evidence supports the finding of respondent judge regarding the second fact: that Mrs. Albertsen did not take the test, and make the statements in connection with it, voluntarily in fact.

Since Mrs. Albertsen did not in fact act of her own free will, I concur in annulment of the writ.