STATE of Iowa, Appellee,

v.

Larry E. FRANKS, Appellant.

No. 58187.

Supreme Court of Iowa.

March 17, 1976.

Johnson, Stuart, Tinley, Peters & Thorn, Council Bluffs, for appellant.

Richard C. Turner, Atty. Gen., John G. Mullen, Asst. Atty. Gen. and Lyle A. Rodenburg, County Atty., for appellee.

Heard by MOORE, C. J., and RAWLINGS, REES, UHLENHOPP and REYNOLDSON, JJ.

RAWLINGS, Justice.

Defendant, Larry E. Franks, appeals from judgment on jury verdict finding him guilty of maliciously threatening injury to the person of another with intent to extort money. We reverse.

November 24, 1974, John Hollingsworth, assistant manager at the Richman Gordman Store in Council Bluffs, received a telephone message directing him to place all cash register money in a paper sack and deposit same in a trash can at the rear of the store. The caller also remarked there was no desire to see Hollingsworth's nice family harmed. While the latter was still on the phone he asked a store customer, John Lockard, later found to be defendant's nephew, to go call the police. Lockard left the premises but as noted by Hollingsworth never entered a phone booth located across the street. Rather, Lockard disappeared around the corner and later returned. In the meantime, Hollingsworth called the police.

The same day defendant was apprehended, taken to the police station, jailed, questioned and upon posting bail was allowed to go home with instructions that he appear in magistrate's court at 9:00 the following morning. Defendant complied with this directive. Subsequent events which preceded the giving of controverted self-incriminating statements by defendant and filing of the instant charge will be later reviewed.

In support of a reversal defendant contends trial court erroneously overruled (1) his pretrial motion to suppress extrajudicial inculpatory statements made by him because they were not voluntarily given; (2) his objections to jury instruction 10 regarding the aforesaid incriminating statements; (3) his mistrial motion made at close of John Lockard's testimony as a State's witness, due to prosecutorial misconduct.

I. The first and in fact determinative issue above raised by defendant relates to voluntariness of his out-of-court incriminating statements to a Council Bluffs Police Department detective and polygraphist.

As previously noted, Franks, following arrest, was released and told to be in court the next morning. After arriving there his name was called several times and though he responded the advice each time given

him was that he be seated. See generally Code §§ 578.1–758.4, 761.1. By way of explanation for this tenuous delay Mr. Richter, assistant county attorney, maintained no information had been filed because he had been trying "to read this rather comprehensive and un-understandable [police] report" in order to determine the appropriate charge to be made.

In any event, after defendant's last "call" he was, about noontime, approached by the prosecutor. Some conversation regarding the Richman Gordman event ensued, during which defendant stated he "had no idea what it really was about". In response Mr. Richter stated, "Larry, if that's the case why don't you take the polygraph and I won't even have to file an Information if you don't know anything about it." Franks acquiesced and was thereupon instructed to return at 1:00 that afternoon. Upon appearing as directed he was escorted alone to a courthouse basement room and there closeted with Maynard J. Sidebottom, a Council Bluffs Police Department detective-polygraphist. Sidebottom initially advised Franks, both orally and in writing, as to his privileges, essentially the *Miranda* warnings, and thereupon secured from defendant a printed "Waiver of Rights". The lie detector operator also obtained from Franks, absent benefit of counsel, a printed "Statement of Release" by which defendant is shown to have *requested* a lie detector test, although the record clearly reveals he merely consented thereto upon the prosecutor's suggestion after the above mentioned courtroom delaying tactics. With regard to evidential use of polygraph tests see generally *State v. Maynard,* 232 N.W.2d 265 (Iowa 1975); *State v. Jones,* 193 N.W.2d 509, 512 (Iowa 1972, and citations; *State v. Galloway,* 167 N.W.2d 89, 94 (Iowa 1969), and citations; *State v. Hancock,* 164 N.W.2d 330, 333–334 (Iowa 1969); Annot., 23 A.L.R.2d 1306, 1311.

Thereafter Sidebottom conducted a background "pretest" interrogation which he says was preparatory to his phrasing of examination questions to be later asked.

Franks testified he responded to the preliminary questioning after which Sidebottom stated he would be going to court for or against defendant; in his opinion Franks was lying; if the case went to trial defendant would get 20 years; and in event Franks pled guilty he would probably be granted probation or a suspended sentence.

Sidebottom (1) admitted having indicated he thought Franks was not telling the truth; (2) acknowledged having said something about being "subpoenaed into court on the outcome on this [polygraph test]"; (3) conceded Franks at first stated "he had nothing to do with this [offense]"; (4) admitted having told Franks before any statement was given by the latter that if his record was as stated "he would probably more than likely receive probation" but denied having mentioned a 20 year sentence if the case went to trial.

It also stands without contradiction defendant, before giving any statement, asked leave to talk with Mr. Richter. Sidebottom called Richter's office but was apparently told the later was in court and not available. When this information was relayed to defendant he asked "Who can I talk to?" Sidebottom responded "I suppose you can talk to me".

Further, in course of the pretrial suppression hearing, the prosecutor asked Franks whether he had voluntarily written the questioned incriminatory statement to which defendant answered in the affirmative. Franks later explained Sidebottom "wasn't standing there with a gun or something telling me I had to write it."

Defendant also testimonially stated:

"I did write a statement that I feel was not of my own free will. Under normal circumstances, I would never have made that statement if the man hadn't kept pressuring about the 20 years. I have never been in any trouble before. I have had no dealings with the police. I have no idea what procedure it is and when someone starts talking to you like that you naturally get scared.

"That's the only thing I could think of, especially when he said if you plead guilty you will get probation. It's better than going to jail even if you are innocent."

By virtue of defendant's aforesaid legalistic conclusion that he had "voluntarily" signed an incriminating statement trial court, with nothing more than a cursory reference to the record, overruled the suppression motion. There was no review of the record in totality. See *State v. Winfrey,* 221 N.W.2d 269, 271 (Iowa 1974); *State v. Cullison,* 215 N.W.2d 309, 314 (Iowa 1974).

Later, in course of trial, Sidebottom was permitted to testify regarding defendant's oral self-incriminating statements and the written confession was admitted in evidence. See generally *State v. Untiedt,* 224 N.W.2d 1, 3 (Iowa 1974). See also *Miranda v. State of Arizona,* 384 U.S. 436, 495, 86 S.Ct. 1602, 1639, n. 69, 16 L.Ed.2d 694 (1966).

■ Mindful of the foregoing factual backdrop, we look now to pertinent guiding principles. At the outset it is apparent Franks, without advice of counsel, was subjected to a custodial interrogation by Sidebottom. See *Orozco v. Texas,* 394 U.S. 324, 327, 89 S.Ct. 1095, 1097, 22 L.Ed.2d 311 (1969); *Miranda v. State of Arizona,* 384 U.S. at 475–479, 86 S.Ct. at 1628–1630; *State v. Swanson,* 228 N.W.2d 101, 104–105 (Iowa 1975).

■ Thus, even though Franks initially executed a waiver of rights, it still remains the burden was upon the State to prove by a preponderance of the evidence defendant's subsequent incriminatory statements were voluntarily given, as a prerequisite to admission thereof as evidence in chief against him. See *State v. Swanson, supra; State v. Cullison,* 227 N.W.2d 121, 127 (Iowa 1975); cf. *Harris v. New York,* 401 U.S. 222, 223–226, 91 S.Ct. 643, 645–646, 28 L.Ed.2d 1 (1971).

■ Also, as heretofore indicated, voluntariness must be evaluated on an ad hoc basis, not on any isolated factor but upon a consideration of all the circumstances in light of contemporary standards. See *State v. Cullison,* 215 N.W.2d at 314.

Moreover, in *State v. Ware,* 205 N.W.2d 700 (Iowa 1973), this court reversed a conviction because the State had introduced in evidence a confession obtained by use of promissory leniency. In so doing we said, 205 N.W.2d at 703:

"It is well established, 'The use in a state criminal trial of a defendant's confession ·obtained by coercion—whether physical *or mental*—is forbidden by the Fourteenth Amendment.' *Payne v. Arkansas,* 356 U.S. [560] at 561, 78 S.Ct. [844] at 847 [, 2 L.Ed. 975]. See *Rogers v. Richmond,* 365 U.S. 534, 540–546, 81 S.Ct. 735, 739–742, 5 L.Ed.2d 760 (1961); *Blackburn v. Alabama,* 361 U.S. 199, 205–208, 80 S.Ct. 274, 279–280, 4 L.Ed.2d 242 (1960); cf. *Davis v. Mississippi,* 394 U.S. 721, 723–724, 89 S.Ct. 1394, 1396, 22 L.Ed.2d 676 (1969).

"Furthermore, we are satisfied the aforesaid 'not so subtle' promissory leniency expressed by officers Booth and Foster induced the then frightened defendant to incriminate himself. See *State v. Jay,* 116 Iowa 264, 265–267, 89 N.W. 1070 (1902). In other words it cannot be said defendant's statement was the product of a 'rational intellect and free will'. See *Malloy v. Hogan,* 378 U.S. 1, 6–10, 84 S.Ct. 1489, 1492–1494, 12 L.Ed.2d 653 (1964); *Lynumn v. Illinois,* 372 U.S. [528] at 534–536, 83 S.Ct. [917] at 920–921 [9 L.Ed.2d 922]; *Spano v. People of New York,* 360 U.S. [315] at 320–325, 79 S.Ct. [1202] at 1205–1208 [3 L.Ed.2d 1265]; 29 Am.Jur.2d, Evidence, § 563.

"As the court stated in *Brady v. United States,* 397 U.S. 742, 753, 90 S.Ct. 1463, 1471–1472, 25 L.Ed.2d 747 (1970):

" '*Bram v. United States,* 168 U.S. 532, 18 S.Ct. 183, 42 L.Ed. 568 (1897), held that the admissibility of a confession depended upon whether it was

compelled within the meaning of the Fifth Amendment. *To be admissible, a confession must be " 'free and voluntary: that is, must not be extracted by any sort of threats or violence, nor obtained by any direct or implied promises, however slight, nor by the exertion of any improper influence.' "* 168 U.S., at 542–543, 18 S.Ct., at 187. More recently, *Malloy v. Hogan,* 378 U.S. 1, 84 S.Ct. 1489, 12 L.Ed.2d 653 (1964), carried forward the *Bram* definition of compulsion in the course of holding applicable to the States the Fifth Amendment privilege against compelled self-incrimination.'

"See *State v. Mullin,* 249 Iowa 10, 85 N.W.2d 598 (1957); *People v. Brommel,* 56 Cal.2d 629, 15 Cal.Rptr. 909, 364 P.2d 845 (1961); *Kier v. State,* 213 Md. 556, 132 A.2d 494 (1957); *State v. Biron,* 266 Minn. 272, 123 N.W.2d 392 (1963); *State v. Watson,* 82 N.M. 769, 487 P.2d 197 (1971); *State v. Hoyt,* 21 Wis.2d 284, 124 N.W.2d 47 (1963)." (emphasis supplied).

See also *Miranda v. State of Arizona,* 384 U.S. at 448, 86 S.Ct. at 1614.

Focusing now upon the voluntariness of any inculpatory statements made by Franks to Sidebottom, the record in totality reveals (1) a devious courtroom procedure, absent any shown pending charge, which avoided appointment of counsel for Franks, culminating in a subtle invitation by the prosecutor that Franks undergo a polygraph test; (2) acceptance of such invitation by the then unrepresented defendant; (3) an artful conversion of the purported lie detector test into a custodial interrogation; (4) use of a pretest technique upon which the policeman-polygraphist based an accusation that Franks was lying; (5) an attendant statement to the effect a guilty plea to an as yet unidentified charge would probably result in probation; (6) a frightened defendant who expressed the desire to consult an apparently unavailable assistant county attorney, from which emanated the non-lawyer interrogator's suggestion that he

could serve as a consultant; and (7) Sidebottom's ultimate elicitation of the controverted inculpatory statements.

Assuming, arguendo, this anomalous array of events was not preconceived, it still cannot be accorded the stamp of approval.

■ Be that as it may, we are satisfied the State failed to prove by a preponderance of the evidence defendant's incriminatory statements were freely and voluntarily made or given. See *Lego v. Twomey,* 404 U.S. 477, 489, 92 S.Ct. 619, 626–627, 30 L.Ed.2d 618 (1972); *State v. Ware,* quoted *supra.* In other words, defendant's self-incrimination was not shown to have been the product of a "rational intellect and free will".

■ From this flows the conclusion defendant's pretrial motion should have been sustained. By the same token admission in evidence of any incriminating statement, oral or written, which Franks made or executed as aforesaid constitutes reversible error. See *State v. Ware,* 205 N.W.2d at 703–705.

Justice dictates the jury verdict and judgment thereon from which this appeal emanated be set aside.

By virtue of this holding other issues here raised by defendant are not reached.

REVERSED AND REMANDED FOR A NEW TRIAL.

MOORE, C. J., and REES and REYNOLDSON, JJ., concur.

UHLENHOPP, J., concurs specially.

UHLENHOPP, Justice (concurring specially).

Officer Sidebottom told defendant that if defendant pleaded guilty and had no past record, he would probably get probation. I think, therefore, the State did not prove by a preponderance of the evidence that defendant's incriminating statements were voluntary. *State v. Ware,* 205 N.W.2d 700 (Iowa); *State v. Mullin,* 249 Iowa 10, 85

N.W.2d 598; *State v. Jay,* 116 Iowa 264, 89 N.W. 1070.

On that basis I concur in the result.