Commonwealth *v.* O'Shea, Appellant.

Argued March 12, 1973. Before JONES, C. J., EAGEN,
O'BRIEN, ROBERTS, POMEROY, NIX and MANDERINO, JJ.

*John R. Cook,* Assistant Public Defender, with him *John J. Dean,* Assistant Public Defender, and *George H. Ross,* Public Defender, for appellant.

*John G. Alford,* Assistant District Attorney, with him *Robert L. Eberhardt,* Assistant District Attorney, and *Robert W. Duggan,* District Attorney, for Commonwealth, appellee.

OPINION BY MR. JUSTICE NIX, April 23, 1974:

Appellant, Ronald O'Shea, was found guilty by a jury of murder in the first degree. Post-trial motions were denied and a sentence of life imprisonment was imposed. This is a direct appeal from the judgment of sentence.

In the early evening of October 27, 1971, the body of the deceased, Thomas Washington, was found in his bedroom. An autopsy revealed that asphyxiation due to strangulation caused his death. Beer cans, discovered in the bedroom and determined to have been purchased on the day of the murder, were found to contain appellant's fingerprints. The police also discovered that appellant was seen with the victim on the morning of the murder. The police, in the course of investigating the murder, sought to question appellant. When they were unable to locate him they left a message with his girlfriend that they wished to speak with him. In response to their request appellant went to the Public Safety Building at approximately 12:30 A.M. at which time he was taken to a private room and asked if he knew the victim and if he had ever been to or knew where the victim lived. Upon receiving answers contradictory to the information they had previously obtained, the police gave appellant his *Miranda* warnings for the first time. After confronting appellant with the contradictions between his answers to the initial, pre-warning questions and the evidence of his

fingerprints on the beer cans, appellant waived his rights and made a statement in which he confessed his complicity in the crime. This statement was admitted into evidence.

Appellant contends that the lower court erred in refusing to grant appellant's motion to suppress the confession on the ground that it stemmed from, and was impermissibly tainted by, the initial custodial interrogation which was illegal in that it was conducted without *Miranda* warnings in violation of appellant's rights against self-incrimination. *Miranda v. Arizona,* 384 U.S. 436, 444-91 (1966) ; *Commonwealth v. Marabel,* 445 Pa. 435, 444, 283 A.2d 285, 289 (1971). See also, *Commonwealth v. Brittain,* 455 Pa. 562, 568 n. 6, 317 A.2d 219, 222 n. 6 (1974) ; *Commonwealth v. Ware,* 438 Pa. 517, 265 A.2d 790 (1970). We agree. Although *Miranda* warnings are not required before interviewing all possible witnesses to the crime, they are required "whenever an individual is questioned while in custody *or* while the object of an investigation of which he is the focus," *Commonwealth v. D'Nicuola,* 448 Pa. 54, 57, 292 A.2d 333, 335 (1972) quoting *Commonwealth v. Feldman,* 432 Pa. 428, 432-33, 248 A.2d 1, 3 (1968). See also, *Commonwealth v. Yount,* 455 Pa. 303, 314 A.2d 242 (1974) [J-278 (1973)]. Furthermore, we have held that: " '[I]t is not simply custody plus "questioning," as such, which calls for Miranda safeguards, but custody plus police *conduct* . . . calculated to, expected to, or likely to, evoke admissions.' " *Commonwealth v. Yount, supra* at 309, 314 A.2d at 245, quoting *Commonwealth v. Simala,* 434 Pa. 219, 226, 252 A.2d 575, 578 (1969).

This case is comparable to *Commonwealth v. D'Nicuola, supra* where the police, knowing only that D'Nicuola and the victim had failed to appear for an appointment and that a recently fired weapon was found in D'Nicuola's car, proceeded to question D'Nicu-

ola without warnings while he was confined to a hospital bed. On those facts we held that he was a suspect and any questioning absent *Miranda* warnings was impermissible.

The instant case is at least as compelling. Here the police questioned appellant in the middle of the night, in a private room in the police building, knowing that appellant had been in the room where the victim was murdered on the day of the murder. It is clear that at this point in time the police investigation had focused upon appellant. *Commonwealth v. Romberger,* 454 Pa. 279, 283, 312 A.2d 353, 355 (1973), *Commonwealth v. D'Nicuola, supra.*

Moreover, the test for custodial interrogation "does not depend upon the subjective intent of the law enforcement officer-interrogator, but upon whether the suspect is physically deprived of his freedom of action in any significant way or is *placed in a situation in which he reasonably believes that his freedom of action of movement is restricted by such interrogation. . . ."* *Commonwealth v. Romberger, supra,* citing *Commonwealth v. Marabel, supra.* Under the circumstances of interrogation at that late hour in the police building "appellant could not reasonably have believed that his freedom remained unfettered. . . . [W]e must conclude that a reasonable man in appellant's situation would have clearly perceived the restraint upon his freedom." *Commonwealth v. Romberger, supra.*

The Commonwealth claims that the initial questioning was non-custodial and was simply an attempt to shed light on the circumstances surrounding the murder. We can find no basis for the Commonwealth's claim. Here appellant was asked questions to which the police already knew the answers. The police conduct was not an innocent attempt to gather information, because they already had this information. It was instead "likely to", if not "calculated to" or "ex-

pected to" evoke admissions and develop contradictions, *Simala, supra.* As events developed the police authorities were eminently successful and there is little question that this preliminary examination in which the appellant made these statements, which were immediately shattered by the information in the possession of the police, was the reason for the subsequent inculpatory statement that was introduced against him at trial.[1] *Commonwealth v. Ware, supra* at 521, 265 A.2d at 792-93, cf. *Commonwealth v. Frazier,* 443 Pa. 178, 181, 279 A.2d 33, 35 (1971).

Under these circumstances the failure to advise appellant of his constitutional rights at the initiation of the interrogation tainted the subsequent confession and it was error to allow its admission into evidence. In view of this conclusion we need not consider appellant's other contentions.

Accordingly, the judgment of sentence is reversed and a new trial is awarded.

Mr. Chief Justice JONES and Mr. Justice POMEROY dissent.

---

[1] One of the interrogating officers testified at the suppression hearing as follows: "Q. All right. What, if anything, did he then say? A. Once we advised him that we did have his fingerprints in there, I guess he realized that we caught him in a lie—"