375 A.2d 1260

**COMMONWEALTH of Pennsylvania**

v.

**Melvin Douglas BROWN, Appellant.**

Supreme Court of Pennsylvania.

Argued Sept. 22, 1975.

Decided July 8, 1977.

Reargument and/or Clarification

Denied Aug. 10, 1977.

564

John J. Dean, Lester G. Nauhaus, Pittsburgh, for appellant.

John J. Hickton, Dist. Atty., Robert L. Eberhardt, Linda L. Kelly, Asst. Dist. Attys., Pittsburgh, for appellee.

Before JONES, C. J., and EAGEN, O'BRIEN, ROBERTS, POMEROY, NIX and MANDERINO, JJ.

## OPINION OF THE COURT

ROBERTS, Justice.

Appellant Melvin Douglas Brown was indicted on charges of murder and voluntary manslaughter arising out of the October 13, 1973 killing of Mary Lee Walters. Appellant's pre-trial application to suppress was denied and the case proceeded to trial on June 18, 1974. The jury found appellant guilty of murder of the second degree. Post-verdict motions were denied, and appellant was sentenced to ten to twenty years imprisonment. In this appeal,[1] appellant contends that the court erred in denying his application to suppress incriminating statements taken from him by the police. We agree, reverse judgment of sentence, and remand for a new trial.[2]

1. We hear this appeal pursuant to the Appellate Court Jurisdiction Act of 1970, Act of July 31, 1970, P.L. 673, art. II, § 202(1), 17 P.S. § 211.202(1) (Supp.1977).

2. A review of the record convinces us appellant's claim that the evidence is insufficient to sustain a verdict of murder of the second degree is without merit. See Act of December 6, 1972, P.L. 1482, § 1, formerly codified at 18 Pa.C.S.A. § 2502(b) (1973). In view of our disposition of this case, we need not address appellant's other assignments of error: (1) denial of a challenge to the

I

■ ■ When ruling on suppression motions, the suppression court is required to make findings of fact and conclusions of law as to whether evidence was obtained in violation of the defendant's constitutional rights. Pa. R.Crim.P. 323(i). The suppression court must determine whether the Commonwealth has established by a preponderance of the evidence that the challenged evidence is admissible. See Pa.R.Crim.P. 323(h). On review, our responsibility is "to determine whether the record supports the factual findings of the court below and the legitimacy of the inferences and legal conclusions drawn from those findings." *Commonwealth v. Goodwin*, 460 Pa. 516, 521, 333 A.2d 892, 895 (1975).

If the suppression court has determined that the evidence is admissible, "this Court will consider only the evidence of the prosecution's witnesses and so much of the evidence for the defense as, fairly read in the context of the record as a whole, remains uncontradicted." *Commonwealth v. Kichline*, 468 Pa. 264, 280, 361 A.2d 282, 290 (1976); see *Culombe v. Connecticut*, 367 U.S. 568, 604, 81 S.Ct. 1860, 1878, 6 L.Ed.2d 1037 (1961) (Opinion of Frankfurter, J.). This rule is subject to the limited exception that where, as here, certain findings by the suppression court are supported by defense testimony, we accept those findings as true even though they are in conflict with evidence presented by the Commonwealth.

Applying these standards the evidence establishes the following: On Saturday, October 13, 1973, the victim was stabbed to death while working after-hours in an of-

array of the petit jury; (2) denial of a motion for a continuance until a new jury selection law came into effect; (3) restriction of questioning of prospective jurors on their attitudes about psychiatric testimony; (4) denial of a challenge for cause of a prospective juror; (5) denial of an application to suppress clothing taken from appellant; (6) admission of evidence of a vaginal bruise on the victim; (7) denial of four requested jury instructions; and (8) the trial court's summarization of a witness' testimony.

fice on the twenty-third floor of the Koppers Building, a downtown Pittsburgh office building. Her body was discovered at about 2:00 a.m., the next morning.

On Sunday, October 14, the Pittsburgh Police Department interviewed individuals who had been in the building the night before. Two detectives went to the home of appellant, a security guard who had been on duty in the Koppers Building the night of the killing. They arrived at appellant's home at 11:00 a.m. They requested appellant to accompany them to the Public Safety Building for questioning. Appellant complied and was taken to the Public Safety Building.

Appellant arrived at the Public Safety Building at noon. Appellant was taken to an interview room where he was left for approximately an hour. The room had no windows, and the door was left closed. The two detectives returned to the interview room at 1:00 p.m., Sunday. Appellant was not advised of his constitutional rights before questioning but was told he was not under arrest. The two detectives asked him about his work schedule at the Koppers Building the night before. The detective who testified at the suppression hearing could not remember if appellant was asked if he was involved in the killing.

Appellant was questioned intermittently all afternoon. Other members of the Koppers Building staff were also questioned at the Public Safety Building Sunday afternoon.

At approximately 9:00 p.m., appellant agreed to take a polygraph examination. The polygraph operator, who had been called in earlier that day, examined two individuals: appellant and James Robinson, a security guard who had been on duty with appellant the night of the killing. Appellant was given *Miranda* warnings [3] in con-

3. See *Miranda v. Arizona*, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).

nection with the polygraph examination. The examination began with background questions, including questions relating to appellant's work schedule the night of the killing. Appellant was also asked if he had been on the twenty-third floor that night, and if he knew who might have committed the killing. Appellant was then asked ten specific questions relating to the crime.

After the polygraph examination, appellant was asked to consent to the search of his home. He was informed orally of his right to refuse to consent to the search and signed a consent form. The consent form included a statement that appellant understood he was not in custody.

Appellant was then driven back to his home by the two detectives who picked him up that morning. They arrived at appellant's home at 10:30 p. m. After appellant gave the officers the clothes he had been wearing on the night of the killing, they drove him back to the Koppers Building, where appellant completed the balance of his 4:00 p. m. to midnight shift.

The next afternoon, Monday October 15, appellant attended a meeting of security guards called by Koppers Building officials. Police officers were present and took handwriting samples, hair samples, and photographs of the security personnel. Lieutenant James Pampena, who was in command of the police investigation, interviewed Robinson and appellant at the Koppers Building. After noting certain discrepancies between Robinson's and appellant's stories, Pampena requested that appellant accompany him and three other officers to the Public Safety Building to "iron out" the discrepancies. Robinson was also taken to the Public Safety Building.

They arrived at the Public Safety Building at approximately 5:15 p. m. Pampena first questioned Robinson for about five minutes, then began interrogation of appellant. During this session, appellant made statements which conflicted with statements he made earlier that

afternoon. At 7:35 p. m., Pampena confronted appellant with these discrepancies and gave appellant *Miranda* warnings. Appellant subsequently admitted he killed the victim. He agreed to have his statement recorded on tape and, after being given a second set of *Miranda* warnings, repeated his admission on tape. Appellant was arraigned at about 10:00 p. m., Monday, October 15.

## II

Appellant contends he was subjected to custodial interrogation without being informed of his rights, requiring suppression of his oral admission and the taped statement which followed. We agree.[4]

*Miranda v. Arizona*, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966), and the decisions of this Court, see e.g., *Commonwealth v. Fisher*, 466 Pa. 216, 352 A.2d 26 (1976); *Commonwealth v. Romberger*, 464 Pa. 488, 347 A.2d 460 (1975), require that, before an individual is subjected to custodial interrogation, he must make a knowing and intelligent waiver of his privilege against self-incrimination and right to counsel, U.S.Const. Amend. V, VI, XIV; Pa.Const. Art. I, § 9, after adequate warning as to these rights.[5] Here, appellant was questioned at the Public Safety Building on Sunday, October 14, and Monday, October 15, without first being informed of his rights. Therefore, we must determine

4. Because we conclude that these statements must be suppressed for failure to warn appellant of his constitutional rights, we need not address the other grounds asserted for suppression of these statements: that they were (1) involuntary; (2) the product of an unnecessary delay between arrest and arraignment; and (3) the product of an unlawful arrest, made without probable cause.

5. The accused must be informed that he has the right to remain silent, that anything he says can be used against him in court, that he has the right to consult an attorney and to have an attorney present during any questioning, and that an attorney will be provided for him if he cannot afford one. *Commonwealth v. Leaming*, 432 Pa. 326, 247 A.2d 590 (1968); see *Miranda v. Arizona*, supra.

whether this questioning constituted custodial interrogation for which warnings were required.

■ As this Court stated in *Commonwealth v. O'Shea,* 456 Pa. 288, 292, 318 A.2d 713, 715, cert. denied, 419 U. S. 1092, 95 S.Ct. 686, 42 L.Ed.2d 685 (1974) (emphasis deleted) the test for custodial interrogation is

> " 'whether the suspect is physically deprived of his freedom in any significant way or is placed in a situation in which he reasonably believes that his freedom of action of movement is restricted by such interrogation . . . .' *Commonwealth v. Romberger,* [454 Pa. 279, 283, 312 A.2d 353, 355 (1973), vacated, 417 U.S. 964, 94 S.Ct. 3166, 41 L.Ed.2d 1136 (1974), reinstated on remand, 464 Pa. 488, 347 A.2d 460 (1975)], citing *Commonwealth v. Marabel* [445 Pa. 435, 441, 283 A. 2d 285, 288 (1971)]."

Accord, *Commonwealth v. Fisher,* 466 Pa. 216, 352 A.2d 26 (1976). Thus, custodial interrogation does not require that the police make a formal arrest, nor that the police intend to make an arrest. Id.; *Commonwealth v. O'Shea,* supra; *Commonwealth v. Bordner,* 432 Pa. 405, 247 A.2d 612 (1968). Rather, the test of custodial interrogation is whether the individual being interrogated reasonably believes his freedom of action is being restricted.

■ Applying this standard, and considering the effect of appellant's contact with the police on both Sunday and Monday, we conclude that appellant reasonably believed his freedom of action was restricted when he was taken to the Public Safety Building on the second day of interrogation, Monday, October 15. Thus, the subsequent questioning constituted a custodial interrogation, for which prior warnings were required.

On Sunday, October 14, the police took appellant to the Public Safety Building, and questioned him intermittent-

ly over a ten hour period. Appellant was not brought back home until the police wanted to pick up his clothing.

The following afternoon, Monday October 15, Lieutenant Pampena questioned appellant at the Koppers Building about his activities the night of the killing. After this additional questioning, Pampena informed appellant that there were discrepancies between his statements and those made by the other security guard on duty with him the night of the killing. Pampena requested that appellant return to the Public Safety Building for further interrogation. Appellant was escorted to the Public Safety Building by Pampena and three other officers and placed in an interview room. While appellant was told he was not under arrest when he was picked up the day before, there is nothing in the record to indicate that appellant was told he was not under arrest when he was brought to the Public Safety Building on Monday. Nor does the record reveal any indication that appellant was told he was free to leave. Questioning began five minutes after appellant arrived at the Public Safety Building, but no warnings were given until two hours later.

In *Commonwealth v. Romberger*, 454 Pa. 279, 312 A. 2d 353, vacated, 417 U.S. 964, 94 S.Ct. 3166, 41 L.Ed.2d 1136 (1974), reinstated on remand, 464 Pa. 488, 347 A. 2d 460 (1975), this Court recognized that an extended stationhouse interrogation creates the reasonable belief in the person being interrogated that his freedom of action is restrained:

"After four hours of interrogation at the police station, appellant could not reasonably have believed that his freedom remained unfettered. . . . [A] reasonable man in appellant's situation would have clearly perceived the restraint on his freedom."

Id. at 283, 312 A.2d at 355 (alternative holding). Here, appellant was questioned over a ten hour period after being taken to the Public Safety Building on Sunday. This experience would contribute to the reasonable belief

that when he was taken to the Public Safety Building on Monday, his freedom of action was subject to the control of the police.

Additionally, when appellant returned to the Public Safety Building on Monday, he knew that the police did not merely want information they had not asked for earlier. Rather, appellant must reasonably have understood that the discrepancies between his statements and those of the other security guard had aroused suspicions in the police that the police wished to explore through further interrogation. The questioning was moved from appellant's place of work to the police station, and appellant was told the further interrogation at the police station would be necessary to iron out discrepancies between his story and statements given by the other security guard. Considering all the circumstances known to appellant, we must conclude that appellant could not reasonably have believed that his freedom remained unfettered when he was taken to the Public Safety Building Monday evening. Therefore, warnings were required.[6]

6. Both the Sunday and Monday interrogations of appellant are in marked contrast to the interrogation in *Oregon v. Mathiason*, 429 U.S. 492, 97 S.Ct. 711, 50 L.Ed.2d 714 (1977). A police officer requested that Mathiason answer questions after the officer left his card at Mathiason's apartment, and Mathiason telephoned the officer. Here, two officers came to appellant's home on Sunday, requesting that he submit to questioning, and there were several officers present when appellant was asked to go to the Public Safety Building on Monday. Mathiason was asked where and when it would be convenient to talk to the officer, and he went to the police station by himself. Appellant was not given any option as to the time and place of questioning, and was accompanied by police officers both times he went to the Public Safety Building. Within five minutes after arriving at the police station Mathiason implicated himself, and he left, by himself, thirty minutes later. Appellant was questioned repeatedly, over two days, before he made any incriminating statement.

Thus, the mere fact that appellant, like Mathiason, was told he was not under arrest does not mean that appellant was never subjected to custodial interrogation. Whatever effect being told he was not under arrest had on the Sunday interrogation, it certainly had no affect when appellant was brought to the police station again on Monday. Nor can we conclude that the questioning of appellant was not custodial interrogation simply be-

In *Commonwealth v. Banks*, 429 Pa. 53, 239 A.2d 416 (1968), this Court found a custodial interrogation when an individual was taken to a police station after being questioned and released the day before. The first day, two police officers went to Banks' home and asked him to accompany them to police headquarters. Banks was released after being questioned at police headquarters. The next day, Banks was again taken to police headquarters, after being informed that the police desired "to further interview him concerning information he had stated in the first interview." Banks was then questioned at police headquarters for two hours before he was warned of his rights. This Court held that the questioning at police headquarters on the second day constituted custodial interrogation. Here, we are presented with an even clearer case of custodial interrogation than in *Banks*. While Banks was told the police wished to interview him further about information he had given earlier, appellant was informed that there were "discrepancies" between his statements and those of the other security guard, and therefore had greater reason to believe the suspicions of the police had been aroused. The decision by the police to move the interrogation from the Koppers Building to the Public Safety Building further underscored the seriousness of the situation, and the control exercised by the police. Finally, appellant had been questioned over an extended period the day before. As in *Banks*, we must conclude that the interrogation at the Public Safety Building Monday evening constituted custodial interrogation.

 In ruling on appellant's application to suppress, the suppression court simply concluded that appellant's admission was voluntarily given, without addressing the issue of when custodial interrogation began. On

cause the police requested that appellant come to the Public Safety Building. See Graham, What is "Custodial Interrogation?": California's Anticipatory Application of *Miranda v. Arizona*, 14 U.C.L.A.Rev. 59, 79–80 (1966).

post-verdict motions, the court reasoned that warnings were not required when interrogation began at the Public Safety Building because appellant was not the focus of the police investigation, as both he and the other security guard had been taken to the Public Safety Building. However, in *Commonwealth v. Simala*, 434 Pa. 219, 252 A.2d 575 (1975), this Court rejected the argument that interrogation is custodial only if the individual is the focus of the police investigation:

> " '[W]henever an individual is questioned while in custody *or* while the object of an investigation of which he is the focus, before *any* questioning begins the individual must be given the warnings established in *Miranda* . . ..' "

Id. at 225, 252 A.2d at 578, quoting, *Commonwealth v. Feldman*, 432 Pa. 428, 432, 248 A.2d 1, 3 (1968) (Opinion of Roberts, J., joined by Bell, C. J. and O'Brien, J.) (emphasis in *Feldman*); accord, *Commonwealth v. D'Nicuola*, 448 Pa. 54, 292 A.2d 333 (1972); cf. *Commonwealth v. Banks*, 429 Pa. 53, 239 A.2d 416 (1968) (rejecting argument that warnings were not required because individual was being questioned "as a witness"); *Commonwealth v. Bennett*, 439 Pa. 34, 264 A.2d 706 (1970) (same). Whether or not appellant was the primary focus of the investigation, he was subjected to custodial interrogation, and should have been advised of rights, before questioning began at the Public Safety Building Monday evening.[7]

7. The Commonwealth does not contend that the *Miranda* warnings given to appellant on Sunday night, in connection with the polygraph examination, satisfy the requirement that he be given warnings before being interrogated at the Public Safety Building on Monday. The *Miranda* warnings were given twenty hours earlier, by a different police officer. See *Commonwealth v. Riggins*, 451 Pa. 519, 304 A.2d 473 (1973) (warnings given seventeen hours earlier were inadequate). Moreover, because the warnings were given in connection with the polygraph examination Sunday night, and no warnings had been given before the interrogation Sunday afternoon, appellant should not be expected to under-

█ We also conclude that the failure to warn appellant of his rights before interrogation began at the Public Safety Building Monday evening requires the suppression of the oral admissions and the subsequent taped statement obtained later that evening. These admissions were obtained through exploitation of the statements obtained from appellant during the earlier, pre-warning interrogation.

At the suppression hearing, Lieutenant Pampena testified that he confronted appellant with the discrepancies between statements he made that evening at the Public Safety Building and the statements he made earlier that afternoon at the Koppers Building, and that this led to appellant's admission. Appellant repeated his admission on tape shortly thereafter. Because appellant's admissions were obtained through exploitation of statements taken before appellant was warned of his rights, they must be suppressed. See *Commonwealth v. Banks*, 429 Pa. 53, 329 A.2d 416 (1968). In this respect, this case is controlled by *Commonwealth v. O'Shea*, 456 Pa. 288, 318 A.2d 713, cert. denied, 419 U.S. 1092, 95 S.Ct. 686, 42 L. Ed.2d 685 (1974). The police requested O'Shea to appear at the Public Safety Building. At the Public Safety Building, O'Shea was asked whether he knew the victim. O'Shea gave an answer which conflicted with information the police already possessed. O'Shea was confronted with the discrepancy, and given *Miranda* warnings. Faced with this discrepancy, O'Shea confessed. This Court required the suppression of O'Shea's confession, obtained after warnings were given, because it was obtained through the use of O'Shea's answers to prewarning questions. Here, too, appellant's oral admission and the subsequent taped statement must be suppressed as

stand that the rights applied to the Monday interrogation session, and not just to the polygraph examination. See generally *Commonwealth v. Bennett*, 445 Pa. 8, 282 A.2d 276 (1971).

they were obtained through the exploitation of appellant's answers to questions asked before warnings were given.

Because the court failed to suppress the incriminating statements taken from appellant in violation of his constitutional rights, appellant is entitled to a new trial.

Judgment of sentence reversed and a new trial granted.

JONES, former C. J., did not participate in the decision of this case.