Commonwealth v. Crespo

C.P. of Berks County, no. 4611/09.

*Douglas A. Rhoads, assistant district attorney,* and *Alisa R. Hobart, district attorney,* for Commonwealth.
*Eric J. Taylor,* for defendant.

BOCCABELLA, *J.,* October 28, 2010—On February 19, 2010, following an omnibus pretrial hearing in the above captioned matter, this court denied the defendant's motion for suppression of evidence regarding his statement made during initial detention, but granted the motion for suppression of evidence regarding his statement at the hospital,[1] and the matter was listed for trial. On March 9, 2010, after a one (1) day bench trial, the defendant was found guilty of two (2) counts of driving under the influence of alcohol[2] and accidents involving damage to unattended vehicle or property.[3]

On April 29, 2010, this court sentenced the defendant,

---

1. No evidence was presented regarding any statements made at the hospital.
2. 75 Pa.C.S.A. § 3802(a)(1) and (c).
3. 75 Pa.C.S.A. § 3745(a).

Henry Alcide Crespo, to not less than ninety (90) days nor more than six (6) months incarceration in the Berks County Jail System and a fifteen hundred dollar ($1,500.00) fine for the DUI and a three hundred dollar ($300.00) fine for accidents involving damage to unattended vehicle or property.

On May 5, 2010, the defendant, by and through his counsel, Eric J. Taylor, Esquire, filed a post-sentence motion, which was denied by this court on June 7, 2010. On July 2, 2010, the defendant, by and through counsel, filed a notice of appeal to the Superior Court of Pennsylvania. On July 9, 2010, this court ordered the defendant as appellant to file a concise statement of matters complained of on appeal pursuant to Pennsylvania Rule of Appellate Procedure 1925. On July 20, 2010, defendant, through his counsel, filed his concise statement. Defendant raises the following issues for appellate review:

1.   Whether the evidence was insufficient to establish that sppellant was guilty of driving inder the influence of alcohol or controlled substance, highest rate of alcohol, 75 Pa.C.S.A. § 3802(c), because there was insufficient evidence that appellant's alcohol concentration was .16 or higher within the requisite two hours after he had driven, operated, or been in actual physical control of the vehicle.

2.   Whether the evidence was insufficient to establish that appellant was guilty of accidents involving damage to unattended vehicle or property, 75 Pa.C.S.A. § 3745(a), because there was no evidence that the car appellant was driving collided with any vehicle or

other property which was unattended, that this collision resulted in any damage to that property, and/or that the owner of the property was not notified.

3.   Whether the suppression court erred by denying appellant's motion to suppress appellant's statements in violation of *Miranda v. United States*, 384 U.S. 436 (1966), and its federal and Pennsylvania progeny, where appellant was in police custody, the police asked questions which were likely to elicit incriminating answers, and where the police did not inform him of his *Miranda* rights and/or where the commonwealth failed to present any evidence regarding the challenged statements from May 21, 2009, the day in question, but rather only presented evidence regarding statements that appellant gave on May 20, 2009.

## FACTUAL SUMMARY

On May 21, 2009, at approximately 1:22 a.m. Officer Michael Perkins of the Reading Police Department was on patrol when he was detailed to respond to a hit and run crash on the 400 block of South 5th Street. Upon arriving, Officer Perkins did not see an accident, but saw that there was debris around a tree and a trail of fluids from that tree heading north on South 5th Street. Officer Perkins stated that he followed the trail of fluids to the intersection of Wood and Bingaman Streets, where he located a blue Ford pickup truck with heavy front-end damage. Officer Perkins said that he found pieces of the vehicle like the bumper, grill, and possibly the undercarriage laying in the street and on the sidewalk. He also observed that the car was leaking fluids and that there was still steam and smoke

coming from the engine compartment of the vehicle.

Officer Perkins ran the license plate of the truck, which came back to the defendant. Officer Perkins put out a broadcast for possible driver information, and shortly thereafter, Officer Perkins was radioed by Officer James Burkhardt and Officer Eric Suydam in regards to two (2) people detained at the intersection of Riverfront and South 5th Streets. Officer Perkins responded to the radio broadcast and found the defendant, Henry Alcide Crespo, and Melissa Prestash, whom the defendant lives with. Officer Perkins stated that the defendant had several lacerations on his forehead and right side of face, which were still bleeding, along with some blood on his shirt, and that Ms. Prestash had just a few scrapes. He then inspected the interior of the truck, observing that both air bags were deployed and that there was some blood on the driver side air bag, steering wheel, and dashboard. Officer Perkins also stated that there was blood on the center console.

The defendant testified and stated that he and Ms. Prestash were drinking at a bar called Maria's that night. He stated that he had about seven (7) drinks that night and that Ms. Prestash had about three (3) drinks. He said that he drove in his truck to the bar, but that Ms. Prestash drove after they left. The defendant stated that he didn't drive since he had a CDL license and that he had drank too much. He stated that they got into a verbal argument while Ms. Prestash was driving. The defendant testified that after she refused to stop the vehicle, that he took his seat belt off and grabbed the steering wheel with his right arm, in an attempt to pull the vehicle over. He stated that

this caused Ms. Prestash to hit the gas. The defendant testified that he blacked out on impact. He said that he met the police officers after Ms. Prestash flagged them down in order to get help, since he was bleeding heavily. The defendant stated that he left the scene of the accident since nobody was around and that it was dark. He also admitted to stating that he didn't want to get Ms. Prestash in trouble, in order to protect her, since she is a recovering addict who requires methadone.

Officer Perkins attempted to speak to the defendant, who he found to have a heavy odor of alcohol coming from his person. Officer Perkins attempted to ask the defendant some questions, but after the first question, he said that the defendant replied with some derogatory remarks and was uncooperative. Officer Perkins stated that it was clear to him that the defendant didn't want to speak to him and was walking towards Ms. Prestash in an attempt to talk to her, when the defendant screamed continuously that he didn't want to get Ms. Prestash in trouble and that he would take the "rap" for whatever happened. Officer Perkins stated that the defendant was not in handcuffs at the time of the statement and that it was not in response to a question posed to him. Officer Perkins said that he does not believe the defendant was read his *Miranda* rights and that he was not free to walk away at that point.

Defense counsel stipulated that the defendant appeared highly intoxicated and that he couldn't safely drive. Further, both parties stipulated that the defendant was taken to St. Joseph Medical Center for his blood to be tested, it was drawn at 3:03 a.m. and it revealed a BAC of 0.259.

400

## DISCUSSION

The defendant has raised three (3) separate and distinct issues for appellate review. The first claim is that there was insufficient evidence to establish that the defendant's alcohol concentration was .16 or higher within the requisite two (2) hours after he had driven, operated, or been in actual physical control of the vehicle. "In evaluating a challenge to the sufficiency of the evidence, we must determine whether, viewing the evidence in the light most favorable to the Commonwealth as verdict winner, together with all reasonable inference therefrom, the trier of fact could have found every element of the crime charged beyond a reasonable doubt." *Commonwealth v. Wall*, 953 A.2d 581, 584 (Pa. Super. 2008) (citation omitted).

> In applying this standard, we bear in mind that the Commonwealth may sustain its burden by means of wholly circumstantial evidence; that the entire trial record should be evaluated and all evidence received considered, whether or not the trial court's rulings thereon were correct; and that the trier of fact, while passing upon the credibility of witnesses and the weight of the proof, is free to believe all, part, or none of the evidence. *Commonwealth v. Kennedy*, 598 Pa. 621, 629-30, 959 A.2d 916, 921 (Pa. 2008).

"The established facts and circumstances do not have to be absolutely incompatible with the accused's innocence, but any doubt is for the factfinder unless the evidence is so weak and inconclusive that no probability of fact can be drawn from the totality of the circumstances as a matter of law." *Commonwealth v. Lyons*, 833 A.2d 245, 258 (Pa.

Super. 2003) (internal citations and quotations omitted).

The motor vehicle code provides in pertinent part:

(c) Highest rate of alcohol.—An individual may not drive, operate or be in actual physical control of the movement of a vehicle after imbibing a sufficient amount of alcohol such that the alcohol concentration in the individual's blood or breath is 0.16% or higher within two hours after the individual has driven, operated or been in actual physical control of the movement of the vehicle. 75 Pa. C.S.A. § 3802 (c).

"The Commonwealth can establish that a defendant had 'actual physical control' of a vehicle through wholly circumstantial evidence." *Commonwealth v. Williams*, 941 A.2d 14, 27 (Pa. Super. 2008), quoting *Commonwealth v. Woodruff*, 668 A.2d 1158, 1161 (Pa. Super. 1995). A determination of actual physical control is based on the totality of the circumstances. *Commonwealth v. Williams*, 941 A.2d 14, 27 (Pa. Super. 2008), quoting *Commonwealth v. Williams*, 871 A.2d 254, 259 (Pa. Super. 2005). "Our precedent indicates that a combination of the following factors is required in determining whether a person had 'actual physical control' of an automobile: the motor running, the location of the vehicle, and additional evidence showing that the defendant had driven the vehicle." *Commonwealth v. Williams*, 941 A.2d 14, 27 (Pa. Super. 2008), quoting *Commonwealth v. Williams*, 871 A.2d 254, 259 (Pa. Super. 2005).

Here, through testimony, the commonwealth has presented evidence in order to show that the defendant

had actual physical control of the vehicle. First of all, the defendant admitted that he "grabbed the steering wheel before the accident." Notes of Testimony, March 9, 2010, p. 37. He stated that he did this in order to "try to pull her over." N.T. at p. 32. That is in itself sufficient to show actual physical control. However, the commonwealth also presented other testimonial evidence from Officer Perkins to show that the defendant was the driver of the truck and sitting behind the wheel. Officer Perkins stated that there was blood found on the driver side airbag, steering wheel, and dashboard the car. N.T. at p. 8-9, 13. Officer Perkins testified that when he first saw the defendant, the defendant had several lacerations on his forehead and right side of the face, which were still bleeding, along with some blood on his shirt, while Ms. Prestash had just a few scrapes. N.T. at p. 8, 23; See also Commonwealth Exhibit No. 3, March 26, 2010, photo #9-#11. Thus, its reasonable to infer based on the blood on the driver side of the defendant's truck and the defendant's injuries, that the defendant was driving while sitting behind the wheel. As such, there is ample evidence to satisfy the critical element of physical control. Next, this court must evaluate whether the commonwealth can make out the critical time element.

The seminal case regarding this type of factual situation and the time element is *Commonwealth v. Segida*, 912 A.2d 841 (Pa. Super. 2006), reversed in part, 985 A.2d 871 (Pa. 2009).[4] In *Segida*, the officer received a dispatch

---

4. When the Supreme Court in *Segida* granted the commonwealth's allowance of appeal in the case, the commonwealth only sought review of the 3802(a)(1) charge, leaving the Superior Court's analysis regarding the 3802(c) charge to stand. See *Segida*, 985 A.2d at 874.

to investigate a one (1) vehicle accident. *Segida*, 912 A.2d at 842. Upon arriving, the officer observed the defendant's car in some brush, with the defendant and his brother standing outside the car. *Id.* The defendant admitted that he had been driving from a local club when he had lost control while arguing with his brother. *Id.* The defendant admitted to drinking alcohol that night and the officer testified to detecting a strong odor of alcohol coming from him. *Id.* The defendant's blood was eventually drawn at an unknown time, which test revealed a BAC of .326. *Id.* The defendant was subsequently found guilty of 3802(c), among other charges. *Id.* at 842-43.

The Superior Court stated that "[w]hile it may not be absolutely essential to draw blood within two hours from the time appellant last drove to satisfy the elements of 75 Pa.C.S. § 3802(a)(2), (b) or (c), the Commonwealth would certainly be obligated, as a prerequisite to conviction, to establish that appellant had a BAC of .16 or higher within two hours of driving." *Id.* at 845. Discussing the timing element, the Superior Court stated that "it would be essential to establish, within some degree of reasonable certainty, the time appellant last drove, as well as when the blood or breath sample was taken." *Id.* at 846; see also *Segida*, 985 A.2d at 879 ("The necessity for the two hour time limit in subsections 3802(a)(2), (b), and (c) is grounded in the practical impossibility either of measuring blood alcohol level precisely at the time of driving or of calculating the exact blood alcohol level at the time of driving from a single *blood alcohol measurement* taken at some point in time after driving.") (emphasis in original)); see also *Commonwealth v. Duda*, 592 Pa. 164, 170, 923

404

A.2d 1138, 1141 (Pa. 2007).

In a challenge to the sufficiency of the evidence, the Superior Court reversed the defendant's conviction as to 2802(c). *Id.* at 844. The Superior Court stated that the commonwealth could not prove that the blood was drawn within the two (2) hour window, especially in light of their failure to indicate the time of the blood draw. *Id.* at 845. The Superior Court noted that the commonwealth was also unable to prove, with reasonable certainty, when the defendant last drove. *Id.* at 846. In discussing what must be shown to imply that an accident occurred recently in order to establish a time window, the Superior Court stated:

Officer Hillyard did not provide testimony from which recency would be implied, such as the fact that the engine was warm, or for example, that a damaged radiator was still steaming. Evidence such as this would have allowed the inference that the accident had occurred very recently and allow the factfinder to conclude that appellant's intoxication at that time, proven by Officer Hillyard's observations and failing field sobriety tests, was indicative of his state of intoxication at the time he was driving. *Id.* at 848; See also *Commonwealth v. Rakowski*, 987 A.2d 1215 (Pa. Super. 2010) (finding that the Commonwealth provided adequate circumstantial evidence in order to establish a time window).

This court finds that this case is distinguishable from *Segida*, as the commonwealth offered evidence to prove when the blood draw occurred and also evidence that the accident occurred recently. Officer Perkins was dispatched to respond to the scene of the accident at approximately

1:22 a.m. N.T. at p. 4. He saw debris from the accident and followed a trail of fluids to the defendant's vehicle. N.T. at p.5. Officer Perkins testified that upon observing the defendant's vehicle, he found pieces of the defendant's vehicle laying on the street and sidewalk. N.T. at p.5. He stated that the defendant's vehicle was leaking fluids and that there was still steam and smoke coming from the engine compartment. N.T. at p. 6. The defendant's blood was drawn at 3:03 a.m. and resulted in a BAC of 0.259. N.T. at p. 12; see also Commonwealth Exhibit No. 2. The defendant also testified that he first met the police officers after Ms. Prestash flagged them down in order to get him help, since he was bleeding heavily. N.T. at p. 33-34.

In this case, due to the 3:03 a.m. blood draw, in order to prove the time element, the commonwealth must prove that the defendant last drove within approximately nineteen (19) minutes from the dispatch that occurred at 1:22 a.m. This court, based on the testimony of Officer Perkins and the defendant, finds that the commonwealth can prove that the accident occurred shortly after the dispatch. As such, there is ample evidence to satisfy the critical time element and to sustain a conviction regarding the 3802(c) charge.

The defendant's second claim is that the evidence was insufficient to establish that the defendant was guilty of accidents involving damage to unattended vehicle or property. Defendant argues that there is no evidence proving that the property, the tree, was damaged, and if the tree was damaged, that it was unattended or that someone other than the defendant or Ms. Prestash owned the tree.

See defendant's post-sentence motions, May 5, 2010, p. 4.

The motor vehicle code provides in pertinent part:

(a) General rule.--The driver of any vehicle which collides with or is involved in an accident with any vehicle or other property which is unattended resulting in any damage to the other vehicle or property shall immediately stop the vehicle at the scene of the accident or as close thereto as possible and shall then and there either locate and notify the operator or owner of the damaged vehicle or other property of his name, address, information relating to financial responsibility and the registration number of the vehicle being driven or shall attach securely in a conspicuous place in or on the damaged vehicle or other property a written notice giving his name, address, information relating to financial responsibility and the registration number of the vehicle being driven and shall without unnecessary delay notify the nearest office of a duly authorized police department. Every stop shall be made without obstructing traffic more than is necessary. 75 Pa.C.S.A. 3745(a).

The commonwealth must prove that: "1) someone was operating a motor vehicle when an accident occurred causing damage to property, and 2) the operator of the motor vehicle fled the scene of the accident." *Commonwealth v. Verticelli*, 550 Pa. 435, 445, 706 A.2d 820, 824 (Pa. 1998).

As discussed above, the commonwealth has proven that

the defendant was operating the motor vehicle. In regards to damage to the property, Officer Perkins testified that he saw debris around a tree and a trail of fluids that led to the defendant's vehicle. N.T. at p. 4-5. Upon arriving at the vehicle, Officer Perkins observed that the truck had heavy front-end damage, and that pieces of the vehicle like the bumper, grill, and possibly the undercarriage were laying in the street and sidewalk. N.T. at p. 5. In regards to fleeing the scene of the accident, the defendant's car was found at the intersection of Wood and Bingaman Streets, whereas the accident with the tree occurred on the 400 block of South 5th Street. N.T. at p.4-5. Also, the defendant testified that he left the scene of the accident since nobody was around and it was dark. N.T. at p. 34. Lastly, this court notes that ownership of the tree is irrelevant. As such, the evidence is clearly sufficient to sustain the conviction of 3745 (a).

Lastly, the defendant contends in his third and final claim that this court erred by denying the defendant's motion to suppress regarding his statement during initial detention. "Where a defendant files a motion to suppress, the burdens of production and persuasion are on the Commonwealth to prove the challenged evidence was not obtained in violation of the defendant's rights." Commonwealth v. West, 834 A.2d 625 at 629 (Pa. Super. 2003), citing Commonwealth v. Wilmington, 729 A.2d 1160 (Pa. Super. 1999); see also Pa.R.Crim.P. 581(H). "[I]t is the sole province of the suppression court to weigh the credibility of the witnesses. Further, the suppression court judge is entitled to believe all, part or none of the evidence presented." Commonwealth v. Santiago, 980 A.2d 659,

664 (Pa. Super. 2009); see also *Commonwealth v. Costa-Hernandez*, 802 A.2d 671, 675 (Pa. Super. 2002); see also *Commonwealth v. Quiles*, 619 A.2d 291, 292 (Pa. Super. 1993), citing *Commonwealth v. Smith*, 577 A.2d 1387, 1388 (Pa. Super. 1990).

Pennsylvania courts have held that there are three levels of interaction between citizens and police officers: (1) mere encounter, (2) investigative detention, and (3) custodial detention. See *Commonwealth v. Krisko*, 884 A.2d 296 (Pa. Super. 2005), citing *Commonwealth v. Jones*, 874 A.2d 108, 116 (Pa. Super. 2005). "A mere encounter between police and a citizen need not be supported by any level of suspicion, and carr[ies] no official compulsion on the part of the citizen to stop or to respond." *Commonwealth v. Beasley*, 761 A.2d 621, 624 (Pa. Super. 2000), citing *Commonwealth v. Riley*, 715 A.2d 1131, 1134 (Pa. Super. 1998). "However, [i]f the police action becomes too intrusive, a mere encounter may escalate into an investigatory [detention] or seizure." *Commonwealth v. Beasley*, 761 A.2d 621, 624 (Pa. Super. 2000), citing *Commonwealth v. Boswell*, 554 Pa. 275, 283, 721 A.2d 336, 339-40 (Pa. 1998). To determine whether a mere encounter rises to the level of an investigatory detention, "the pivotal inquiry is whether, considering all the facts and circumstances evidencing the exercise of force, a reasonable man would have thought he was being restrained." See *Commonwealth v. Mendenhall*, 552 Pa. 484, 489, 715 A.2d 1117, 1120 (Pa. 1998), citing *Commonwealth v. Jones*, 474 Pa. 364, 372-73, 378 A.2d 835, 840 (Pa. 1977); see also *United States v. Mendenhall*, 446 U.S. 544, 554 (1980).

"In this Commonwealth, the test for custodial interrogation is whether the suspect is physically deprived of his freedom in any significant way or is placed in a situation in which he reasonably believes that his freedom of action or movement is restricted by said interrogation." *Commonwealth v. Proctor*, 657 A.2d 8, 10 (Pa. Super. 1995) citing *Commonwealth v. Gonzalez*, 519 Pa. 116, 124, 546 A.2d 26, 29 (Pa. 1988), *Commonwealth v. Jermyn*, 516 Pa. 460, 481, 533 A.2d 74, 84 (Pa. 1987), *Commonwealth v. Reed*, 583 A.2d 459, 462-63 (Pa. Super. 1990). "A person is deemed in custodial interrogation if he is placed in a situation in which he reasonably believes that his freedom of action is restricted by the interrogation." *Commonwealth v. Zogby*, 689 A.2d 280, 282 (Pa. Super. 1997) citing *Commonwealth v. Williams*, 539 Pa. 61, 74, 650 A.2d 420 (Pa. 1994), *Commonwealth v. Brown*, 473 Pa. 562, 375 A.2d 1260 (Pa. 1977). "[T]he test focuses on whether the individual being interrogated reasonably believes his freedom of action is being restricted." *Commonwealth v. Gibson*, 553 Pa. 648, 662-63, 720 A.2d 473, 480 (Pa. 1998), quoting *Commonwealth v. Williams*, 539 Pa. 61, 74, 650 A.2d 420, 427 (Pa. 1994).

"Once it is established that a defendant is in custody (or his freedom of movement is curtailed in any significant way), *Miranda* warnings are necessary as a condition precedent to the admission of the accused's inculpatory statements." *Commonwealth v. Proctor*, 657 A.2d 8, 10 (Pa. Super. 1995), citing *Commonwealth v. Gonzalez*, 519 Pa. 116, 124, 546 A.2d 26, 29 (Pa. 1988), *Commonwealth v. Jermyn*, 516 Pa. 460, 481, 533 A.2d 74, 84 (Pa. 1987),

and *Commonwealth v. Reed*, 583 A.2d 459, 462-63 (Pa. Super. 1990). While this was not a traffic stop case, the United States Supreme Court has stated that the "noncoercive aspect of ordinary traffic stops prompts us to hold that persons temporarily detained pursuant to such stops are not 'in custody' for the purposes of *Miranda*." *Pennsylvania v. Bruder*, 488 U.S. 9, 10 (1988) quoting *Berkemer v. McCarty*, 468 U.S. 420, 440 (1984). "The court reasoned that:

> [A]though the stop was unquestionably a seizure within the meaning of the Fourth Amendment, such traffic stops typically are brief, unlike a prolonged station house interrogation. Second, the court emphasized that traffic stops commonly occur in the "public view," in an atmosphere far "less 'police dominated' than that surrounding the kinds of interrogation at issue in *Miranda* itself." *Pennsylvania v. Bruder*, 488 U.S. 9, 10 (1988) citing *Berkemer v. McCarty*, 468 U.S. 420, 438-39 (1984).

*Miranda* warnings are required "only if the police questioning constitutes interrogation; that is, likely or expected to elicit a confession or other incriminating statements." *Commonwealth v. Bracey*, 461 A.2d 775, 780 (Pa. 1983) (citations omitted). The Pennsylvania Supreme Court has recognized that "procedural safeguards were necessary to protect a suspect from the inherently compelling pressures of *in-custody interrogations* 'which work to undermine the individual's will to resist and to compel him to speak where he would not otherwise do so freely.'" *Commonwealth v. Bracey*, 501 Pa. 356, 365, 461

A.2d 775, 780 (Pa. 1983) (emphasis supplied), quoting *Miranda v. Arizona*, 284 U.S. 436,467(1966).

In considering the voluntariness of a confession and/or waiver of *Miranda* rights, the trial court makes an evaluation under a totality of the circumstances analysis. *Commonwealth v. Gwynn*, 555 Pa. 86, 101, 723 A.2d 143, 150 (Pa. 1999) citing *Commonwealth v. Goodwin*, 460 Pa. 516, 519, 333 A.2d 892, 894-95 (Pa. 1975). Regarding admissibility, confessions are to be considered based "on their evidentiary trustworthiness." *Commonwealth v. Graham*, 408 Pa. 155, 182 A.2d 727 (Pa. 1962). "The Commonwealth has the burden of proving by a preponderance of the evidence that the defendant confessed voluntarily." *Commonwealth v. Watts*, 465 A.2d 1288 (Pa. Super. 1983), *affirmed*, 489 A.2d 747 (Pa. 1985). The Pennsylvania Supreme Court has stated that an "[i]nterrogation occurs where the police should know that their words or actions are reasonably likely to elicit an incriminating response from the subject." *Commonwealth v. Gwynn*, 555 Pa. 86, 99, 723 A.2d 143, 149 (Pa. 1999) citing *Commonwealth v. Hughes*, 536 Pa. 355, 370, 639 A.2d 763, 771 (Pa. 1994).

However, the Pennsylvania Supreme Court has stated that "[I]t is well established in Pennsylvania that volunteered or spontaneous utterances are admissible even though the declarant was not '*Mirandized*,'" *Commonwealth v. Baez*, 554 Pa. 66, 85, 720 A.2d 711, 720 (Pa. 1999) (citations omitted). Thus, if defendant makes speaks, unsolicited by police, *Miranda* warnings are unnecessary. *Commonwealth v. Gibson*, 553 Pa. 648, 663, 720 A.2d 473, 480 (Pa. 1998) ("Furthermore,

Gibson's statements to the police during the search of his vehicle were made voluntarily and were not responsive to any queries by the officers; rather Gibson initiated the conversation.") citing *Commonwealth v. Abdul-Salaam*, 544 Pa. 514, 532, 678 A.2d 342, 351 (Pa. 1996), *certiori denied*, 520 U.S. 1157 (1997); See also *Commonwealth v. King*, 554 Pa. 331, 335, 721 A.2d 763, 775 (Pa. 1998). "It is well established that a statement which is spontaneously volunteered is admissible notwithstanding a prior assertion of constitutional rights." *Commonwealth v. Bracey*, 501 Pa. 356, 370, 461 A.2d 775, 782 (Pa. 1983) citing *Commonwealth v. Scarborough*, 491 Pa. 300, 421 A.2d 147 (Pa. 1980).

It is the defendant's position that once he was detained at the intersection of 2nd and Riverfront Streets and questioned, that he was entitled to *Miranda* warnings. See defendant's memorandum of law in support of defendant's omnibus pretrial motion, p.2. However, this position must fail for several reasons. To begin, the police had sufficient facts to conduct an investigatory detention, as a vehicle registered to him was recently involved in a vehicle accident and nobody was at the scene. N.T. February 3, 2010, p. 4-5. Also, the defendant was not in custody, as the stop of the defendant was temporary and noncoercive, much like a traffic stop. See *Bruder*, 488 U.S. at 10. Also, the defendant was not in handcuffs[5] during the detention. N.T. at p.7. However,

---

5. This court recognizes that during the February 3, 2010 hearing, it was under the impression that the defendant had been arrested at the time of the statements and made its legal findings with that fact in mind. After viewing the transcript and finding that the defendant was in fact not in handcuffs, the court will proceed in this appeal considering the

even if the defendant was in custody, the defendant was not being questioned when he made his statements. Officer Perkins only asked the defendant one (1) question since the defendant replied with some derogatory remarks. N.T. at p. 9. As the defendant was walking away, the defendant made his statements, screaming continuously that he did not want to get Ms. Prestash in trouble and that he would take the "rap" for whatever happened. N.T. at p.6-7.

As such, the evidence is clearly sufficient to conclude there the defendant's stop was under the category of an investigative detention. However, even if the defendant was in custody, he made his statements when he wasn't being spoken to, making his statements a gratuitous utterance, where *Miranda* warnings are unnecessary. See *Gibson*, 720 A.2d at 480.

The defendant also seeks relief due to Officer Perkin's statement during the suppression hearing that the defendant's statements occurred on May 20, 2009, not May 21, 2009. This court finds that there was ample testimony provided that the statements in relation to the incident happened on May 21, 2009 and that the misstatement was not prejudicial to the defendant. As such, the evidence is clearly sufficient to conclude that the defendant's *Miranda* rights were not violated.

For the foregoing reasons this court respectfully requests defendant's appeal be denied and his judgment of sentence affirmed.

---

defendant was only being detained, not arrested. See order regarding the defendant's motion for suppression of evidence, dated February 19, 2010.