J-A13017-18

NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| v. | : | |
| JEREMEY DANIEL SICKENBERGER, | : | |
| Appellant | : | No. 871 WDA 2017 |

Appeal from the Judgment of Sentence December 15, 2016
In the Court of Common Pleas of Butler County
Criminal Division at No.: CP-10-CR-0000805-2014

BEFORE: OLSON, J., DUBOW, J., and MUSMANNO, J.

MEMORANDUM BY DUBOW, J.:                           FILED JANUARY 23, 2019

Appellant, Jeremey Daniel Sickenberger, appeals from the Judgment of Sentence entered by the Butler County Court of Common Pleas after his conviction by a jury of Third-Degree Murder.[1]  We affirm on the basis of the trial court's November 23, 2015 Opinion.

The court summarized many of the relevant facts in its November 23, 2015 Opinion, so we will not repeat them in detail.  Briefly, on April 17, 2014, Appellant shot the victim, Thomas Stockman, in the chest using a .22 caliber pump-action rifle, killing him.

During the subsequent police investigation of the shooting, troopers interviewed Appellant without an attorney present.  After troopers read

_____

[1] 18 Pa.C.S. § 2502(c).

Miranda[2] warnings, Appellant provided incriminating statements both before and after his arrest during separate recorded interviews.

During a pre-arrest interview, the troopers issued Miranda warnings and informed him that he was not under arrest. Appellant asked: "So if I sign this, I can't get an attorney?" Trial Court Opinion, filed 11/23/15, at 4. The troopers told Appellant "No, it's not[,]" and explained that the form simply clarified that he had read it to Appellant and that it informed Appellant of his rights. Id. Appellant signed the Miranda waiver and then spoke with the troopers for forty minutes.

After the troopers arrested Appellant for the shooting, Appellant agreed to another recorded interview. The troopers again issued Miranda warnings and Appellant indicated he understood the rights he was waiving. During the warnings, Appellant asked for the following clarification: "So I can still stop to [inaudible] that I can get an attorney?" Id. at 5. The trooper responded "Absolutely. Whatever you want to do. That's, that's what this, that's what this tells you." Id. After this final interview, the troopers informed Appellant about his hearing and appearance before a magistrate the next morning. Appellant asked, "How can I get an attorney arranged for it?" Id. at 6. The troopers informed Appellant about the paperwork and process and his opportunity to make a telephone call.

_____

[2] Miranda v. Arizona, 384 U.S. 436 (1966).

Appellant filed a counseled Motion to Suppress his statements to police. At the October 29, 2015 suppression hearing, Trooper Michael Taylor testified about his recorded interviews with Appellant. The Commonwealth also presented the video recordings of Appellant's interviews, and Appellant's written and signed waiver forms. After the hearing, the court denied Appellant's Motion in a thorough Opinion filed on November 23, 2015.

Appellant requested a jury trial, and on September 21, 2016, the jury convicted Appellant of Third-Degree Murder.

On December 15, 2016, the trial court sentenced Appellant to an aggregate term of 18 to 40 years' incarceration.[3] Appellant filed a timely Post-Sentence Motion seeking, inter alia, the reconsideration of his sentence. The trial court denied Appellant's Post-Sentence Motion in an Order and accompanying Opinion filed on May 16, 2017.

On June 15, 2017, Appellant filed a Notice of Appeal. Both Appellant and the trial court complied with Pa.R.A.P. 1925.

Appellant presents three issues for our review:

1. Did the trial court err[] by failing to suppress statements made by [Appellant] during the interrogations that took place at the police barracks when [Appellant] had invoked his right to counsel but police continued to question him rather than halt the interview?

_____

[3] Notably, the trial court's sentence fell within the standard range of the applicable sentencing guidelines.

2. In the alternative, assuming arguendo this Court finds [Appellant] did not invoke his right to counsel, was [Appellant's] waiver of counsel a knowing and intelligent waiver?

3. Did the sentencing court fail to adequately consider the mitigating factors, fail to adequately consider [Appellant's] rehabilitative needs, and did the sentencing court base the length of sentence exclusively on the seriousness of the crime and thus impose a "manifestly excessive" sentence?

Appellant's Brief at 5.

Motion to Suppress

In his first two issues, Appellant argues that the court erred in denying his Motion to Suppress. Appellant's Brief at 16-27. First, Appellant avers that two of his statements indicated that he had invoked his right to counsel: (1) when the troopers were issuing Miranda warnings and explaining his rights during a pre-arrest interview, Appellant asked: "So if I sign this, I can't get an attorney?" and (2) during subsequent Miranda warnings for a different post-arrest interview, Appellant asked, "So I can still stop to [inaudible] that I can get an attorney?"[4] Appellant's Brief at 16-24. Second, Appellant alternatively claims that he "did not knowingly and intelligently waive his Miranda rights." Appellant's Brief at 25.

_____

[4] Appellant also claims that the troopers did so knowing that Appellant had been diagnosed with autism spectrum disorder. Appellant's Brief at 21 n.1. In his Brief, Appellant concedes that the suppression court did not have any evidence about Appellant's "learning disability" because trial counsel did not present any such evidence.

- 4 -

In reviewing the denial of a motion to suppress, we are limited to considering only the Commonwealth's evidence and "so much of the evidence for the defense as remains uncontradicted when read in the context of the record as a whole." Commonwealth v. McCoy, 154 A.3d 813, 815-16 (Pa. Super. 2017). Where the testimony and other evidence supports the court's findings of fact, we are bound by them and "may reverse only if the court erred in reaching its legal conclusions based upon the facts." Id. at 816. It is within the exclusive province of the suppression court to "pass on the credibility of witnesses and determine the weight to be given to their testimony." Id. This Court will not disturb a suppression court's credibility determination absent a clear and manifest error. Commonwealth v. Camacho, 625 A.2d 1242, 1245 (Pa. Super. 1993).

"The scope of review from a suppression ruling is limited to the evidentiary record created at the suppression hearing." Commonwealth v. Neal, 151 A.3d 1068, 1071 (Pa. Super. 2016) (citing In re L.J., 79 A.3d 1073, 1087 (Pa. 2013)).

Importantly, "[o]nce a motion to suppress evidence has been filed, it is the Commonwealth's burden to prove, by a preponderance of the evidence, that the challenged evidence was not obtained in violation of the defendant's rights." Commonwealth v. Wallace, 42 A.3d 1040, 1047-48 (Pa. 2012) (citations omitted); see also Pa.R.Crim.P. 581(H).

"The law is well-settled that a defendant who requests counsel at any time during a custodial interview is not subject to further interrogation by the authorities until counsel has been made available to him, unless the accused himself initiates further communication, exchanges, or conversations with the police." Commonwealth v. Edwards, 903 A.2d 1139, 1150 (Pa. 2006) (citation and quotation marks omitted).

A suspect is entitled to Miranda warnings prior to a custodial interrogation. Commonwealth v. Boyer, 962 A.2d 1213, 1216 (Pa. Super. 2008) (noting that defendant's statement "I don't want to talk to you" was an invocation of his Miranda rights). If a suspect "indicates, in any manner, at any time prior to or during questioning, that he wishes to remain silent, the interrogation must cease." Commonwealth v. Henry, 599 A.2d 1321, 1323 (Pa. Super. 1991) (internal citations omitted). However, the United States Supreme Court has held that the invocation of the right to remain silent or request an attorney must be affirmative, clear, and unambiguous. See Berghuis v. Thompkins, 560 U.S. 370 (2010); see also Commonwealth v. Briggs, 12 A.3d 291, 318 n.27 (Pa. 2011) (noting that the Supreme Court has held that an individual in police custody subject to interrogation must affirmatively invoke his or her Miranda rights).

It is the Commonwealth's burden to establish that a defendant "knowingly and voluntarily waived his Miranda rights." Commonwealth v. Johnson, 42 A.3d 1017, 1029 (Pa. 2012). A defendant must explicitly waive

his Miranda rights by making an "outward manifestation" of that waiver. Commonwealth v. Cohen, 53 A.3d 882, 886 (Pa. Super. 2012). A suppression court may properly find that Miranda rights have been waived where the totality of the circumstances shows "an uncoerced choice and the requisite level of comprehension[.]" In re T.B., 11 A.3d 500, 505-06 (Pa. Super. 2010) (citation and quotation marks omitted).

The Honorable William R. Shaffer, sitting as the trial court, has authored a comprehensive, thorough, and well-reasoned Opinion, citing the record and relevant case law in addressing Appellant's suppression claim. See Trial Court Opinion, filed 11/23/15, at 1-11 (concluding that there is no merit to Appellant's suppression claims because, inter alia, Appellant "did not ask for an attorney before or during [any] interview, nor did he assert his right to remain silent[;]" and Appellant understood and voluntarily waived his rights as demonstrated by the video recordings and the signed waiver forms, which show that Appellant provided his statements to police voluntarily "following a valid knowing and intelligent waiver of his Miranda rights."). We, thus, affirm on the basis of the trial court's November 23, 2015 Opinion.

Discretionary Aspects of Sentencing

In his third issue on appeal, Appellant acknowledges that his sentence fell within the standard range of the sentencing guidelines, but avers that the trial court failed to consider various mitigating factors adequately, such as Appellant's rehabilitative needs, which resulted in the imposition of an

excessive sentence.  Appellant's Brief at 29, 32.  Such a claim challenges the discretionary aspects of his sentence.

Challenges to the discretionary aspects of sentence are not appealable as of right.  Commonwealth v. Leatherby, 116 A.3d 73, 83 (Pa. Super. 2015).  Rather, an appellant challenging the sentencing court's discretion must invoke this Court's jurisdiction by (1) filing a timely notice of appeal; (2) properly preserving the issue at sentencing or in a motion to reconsider and modify the sentence; (3) complying with Pa.R.A.P. 2119(f), which requires a separate section of the brief setting forth a concise statement of the reasons relied upon for allowance of appeal with respect to the discretionary aspects of a sentence; and (4) presenting a substantial question that the sentence appealed from is not appropriate under the Sentencing Code.  See id.

An appellant raises a "substantial question" when he "sets forth a plausible argument that the sentence violates a provision of the sentencing code or is contrary to the fundamental norms of the sentencing process." Commonwealth v. Crump, 995 A.2d 1280, 1282 (Pa. Super. 2010) (citation omitted).

It is clear from our precedent that Appellant has failed to raise a substantial question with respect to his sentencing arguments.  See, e.g., Commonwealth v. Griffin, 65 A.3d 932, 936-37 (Pa. Super. 2013) (claim that the trial court failed to consider defendant's rehabilitative needs in imposing standard-range sentences did not raise a substantial question);

Commonwealth v. Mobley, 581 A.2d 949, 952 (Pa. Super. 1990) (claim that sentence failed to take into consideration the defendant's rehabilitative needs and was manifestly excessive did not raise a substantial question where sentence was within statutory limits and within sentencing guidelines). See also Commonwealth v. Miklos, 159 A.3d 962, 970 (Pa. Super. 2017), appeal denied, 170 A.3d 1042 (Pa. 2017) (holding that an argument that the sentencing court failed to adequately consider mitigating factors in favor of a lesser sentence does not present a substantial question appropriate for our review); Commonwealth v. Williams, 562 A.2d 1385, 1388 (Pa. Super. 1989) (en banc) (concluding that an allegation that the sentencing court did not adequately consider various factors is, in effect, a request that this court substitute its judgment for that of the lower court in fashioning a defendant's sentence).[5]

In light of the foregoing, we affirm Appellant's Judgment of Sentence.

---

[5] Moreover, even had Appellant presented a substantial question, he would not be entitled to relief. The trial court acknowledged and considered, inter alia, the facts of this case, the pre-sentence investigation report, the sentencing guidelines, the witnesses at sentencing, the letters about Appellant's good character, and the expert testimony and report about Appellant's autism spectrum disorder diagnosis. See Trial Court Opinion, filed 5/16/17, at 8; N.T. Sentencing, 12/15/16, at 69-71. After thoroughly reviewing the certified record, including the sentencing transcript, the briefs of the parties, the applicable law, and the comprehensive and well-reasoned Opinion of the trial court, we conclude that there is no merit to Appellant's sentencing claims.

The parties are instructed to attach a copy of the trial court's November 23, 2015 Opinion to all future filings.

Judgment of Sentence affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 1/23/2019

# IN THE COURT OF COMMON PLEAS OF BUTLER COUNTY, PENNSYLVANIA

COMMONWEALTH OF PENNSYLVANIA
CRIMINAL DIVISION

vs.
C.A. No. 0805 of 2014

JEREMY DANIEL SICKENBERGER

For the Commonwealth: Richard A. Goldinger, Esq., Assistant District Attorney
For the Defendant: Joseph L. Smith, Esq., Assistant Public Defender

Judge William R. Shaffer
November 23, 2015

## MEMORANDUM OPINION

The Defendant seeks suppression of statements[1] he made in the hours following the shooting death of the victim, Thomas Stockman. A hearing on the Defendant's Omnibus Motion was held on October 29, 2015. In his motion, the Defendant presents two theories in support of suppression: 1) he was subject to custodial interrogation without the benefit of _Miranda_[2] warnings; and 2) he was arrested absent probable cause, and that improper arrest tainted any subsequent statements made by him. At the time of the hearing, the Commonwealth presented the testimony of a single witness: Trooper Michael Taylor, an eleven-year veteran of the Pennsylvania State Police who, at the time of the challenged interviews, was a Criminal Investigator. Following the time of the hearing, a compact disc containing an interview of the Defendant was submitted to the Court; counsel for both sides stipulated to its authenticity.

---

[1] At the time of the hearing on the Defendant's Omnibus Motion, counsel for both sides indicated that issues related to discovery had been resolved or were in the process of being resolved. The Court, therefore, need not decide any issues related to discovery.

[2] _Miranda v. Arizona_, 384 U.S. 436, 86 S. Ct. 1602, 16 L. Ed. 2d 694 (1966).

1

70

Counsel for the Defendant, at the time of the hearing, requested that the Court review the recording and decide if the Defendant requested an attorney. Based on the testimony of Trooper Taylor, which the Court finds credible, and our review of the submitted recording, we make the following findings of fact.

On April 17, 2014, Trooper Taylor responded to 146 Robbie Way in Portersville, Butler County, in response to a 911 call during which it was reported that there had been an accidental shooting. The Trooper, dressed in civilian clothing, arrived sometime after dark and spoke to others on the scene. Several individuals who had been present during the shooting were located outside of the residence. Trooper Taylor conducted brief interviews with each person in order to determine what had occurred. The interviews each lasted between seven and ten minutes and took place inside the Trooper's police vehicle, with the interviewees located in the front passenger seat. The interviews were recorded with the permission of each interviewee. Trooper Taylor first interviewed Ashley Homison. He next interviewed the Defendant. The Defendant was not under arrest during the interview. Following the Trooper's interview with the Defendant, he briefly interviewed two other individuals who were there. At the time of the interviews, Trooper Taylor did not know the status of the victim and had no reason to believe that a crime had been committed.

After the interviews concluded, Trooper Taylor went inside the residence to examine the scene where the shooting had taken place. The examination took approximately one hour. The Defendant's version of what had taken place did not match the physical evidence observed at the residence. Trooper Taylor obtained permission from the on-site Lieutenant to call for assistance. Trooper Chris Birkbichler was contacted and in due course arrived on the scene. After

2

-7C

examining the residence, Trooper Birkbichler concurred with Trooper Taylor's assessment that the Defendant's version of what had happened did not match the physical evidence. During this time Trooper Taylor was informed that the victim had passed away. After collecting evidence from inside the Robbie Way residence, Trooper Taylor went outside and asked all the people there if they were willing to come to the State Police Barracks and ride in separate vehicles so as not to contaminate each other's statements. Each person agreed. It was approximately 9:30 or 10:00 P.M. at that time. The Defendant was asked to ride with Trooper Taylor. He agreed to do so. The Defendant rode to the Barracks in the front seat of Trooper Taylor's vehicle. He was not handcuffed during the ride.

Once at the Barracks, the Defendant was taken to an interview room. Trooper Birckbichler was there and asked the Defendant if he would give permission for the interview to be audio and video recorded. The Defendant agreed. The Defendant was told at that time that he was not under arrest and that he was free to leave at any time. The Defendant gave a version of the events that conflicted in some ways with his earlier statement. Trooper Taylor testified that it was his normal practice to offer interviewees a beverage, but he could not recall whether he actually did so in this instance. During the interview, the troopers told the Defendant something to the effect that mistakes or accidents can happen, but that they needed the matter to be cleared up. The Defendant indicated that he was holding the weapon in a low position with his hand off of the trigger when it fired. Trooper Birckbichler then reminded the Defendant that he was free to leave and the conversation continued. The interview lasted approximately one hour. After the interview concluded, the Defendant was taken to the lobby of the State Police Barracks. He was not detained at that time.

3

The troopers interviewed the other people who had traveled to the Barracks. Details of the stories they gave were different from what they had told Trooper Taylor outside of the Robbie Way residence. Trooper Taylor then approached the Defendant in the lobby and again asked him if he was willing to speak to the troopers. The Defendant agreed. He was at about that time advised of his *Miranda* warnings. The Defendant acknowledged that he understood those warnings. Trooper Taylor testified that after the warnings were read to the Defendant, he asked: "So if I sign this, I can't get an attorney?" The Defendant was then informed that the form was merely informing the Defendant of his rights. The Defendant signed the *Miranda* waiver. At the time of the hearing, the Commonwealth introduced into evidence as Exhibit 1 a Pennsylvania State Police Rights Warning and Waiver that was signed by the Defendant and witnessed by Troopers Taylor and Birckbichler. The Defendant was informed that he was not in custody. The interview lasted approximately forty minutes. The Defendant admitted that he had retrieved the gun used in the shooting from a bedroom of the Robbie Way residence. The Defendant was asked if he was willing to submit his clothing for examination. He agreed and submitted his clothing to the troopers. He was given replacement garments to wear. After the interview, the Defendant was driven home by Trooper Birckbichler because everyone else who had been at the Robbie Way residence had left the State Police Barracks.

Later that day, after Alshey Homison had given statements that further implicated the Defendant, the troopers traveled to the Defendant's residence and, once there, placed the Defendant in handcuffs. The Defendant was then transported to the State Police Barracks. The Defendant was taken to an interview room. Once there he granted permission for the interview to be recorded. The Defendant was advised of his *Miranda* rights by Trooper Birckbichler. The recording submitted to the Court as Defendant's Exhibit A reveals that Trooper Birckbichler

4

7c

informed the Defendant that the interview was being recorded, and the Defendant indicated that he had no objection. The recording also revealed that Trooper Birckbichler told the Defendant that he was in custody and he did not have the right to leave. Trooper Birckbichler recited the warnings contained in the Pennsylvania State Police Rights Warning and Waiver to the Defendant verbatim. The recoding reveals that when Trooper Birckbichler asked the Defendant if he understood the rights that had been given, the Defendant indicated that he did understand his rights. The following exchange then took place:

Trooper Birckbichler: Alright. The waiver you're going to be signing says I fully understand the statement warning me of my rights and I am willing to answer questions. I do not want an attorney, and I understand that I may stop answering questions any time during the questioning. No promises have been made to me, nor have I been threatened in any manner. Understand all that?

The Defendant: So I can still stop to [inaudible] that I can get an attorney?

Trooper Birckbichler: Absolutely. Whatever you want to do. That's, that's what this, that's what this tells you.

Trooper Taylor: Did you have, uh, anything to drink today? No alcohol?

The Defendant: Not me, no.

Trooper Taylor: No alcohol?

The Defendant: Nope.

Trooper Taylor: Nothing at all?

Trooper Birckbichler: You want a water or anything?

The Defendant: Nope.

Trooper Birckbichler: Okay.

5

7C

As Exhibit 2, the Commonwealth introduced into evidence a Pennsylvania State Police Rights Warning and Waiver form with the time of 20:41 that is signed by the Defendant and witnessed by Trooper Taylor and Trooper Birckbichler. Following the above exchange, the interview proceeds. At all times Trooper Taylor and Trooper Birckbichler acted in a courteous, respectful, and professional manner and no threats were made against the Defendant. At the conclusion of the interview, the troopers explained to the Defendant that he would be taken before a magistrate the following morning. The Defendant asks: "How can I get an attorney arranged for it?" The troopers explained that paperwork to apply for a Public Defender would be made available and that the Defendant would have the opportunity to make a telephone call. At no time during the interview did the Defendant ask for an attorney or assert his right to remain silent.

The Defendant first argues that he was subjected to custodial interrogation without the benefit of *Miranda* warnings. Before an individual is subjected to a custodial interrogation, he or she must make a knowing and intelligent waiver of his privilege against self-incrimination and right to counsel after adequate warning as to those rights. *Commonwealth v. Williams*, 650 A.2d 420, 427 (Pa. 1994). Custodial interrogation is defined as questioning initiated by law enforcement officers after a person has been taken into custody or otherwise deprived of his freedom of action in any significant way. *Commonwealth v. Cooley*, 118 A.3d 370, 376 (Pa. 2015)(citing *Miranda*, 384 U.S. at 444). The test for custodial interrogation does not depend upon the subjective intent of the law enforcement officer-interrogator, but upon whether the suspect is physically deprived of his freedom of action in any significant way or is placed in a situation in which he reasonably believes that his freedom of action or movement is restricted by such interrogation. *Commonwealth v. O'Shea*, 318 A.2d 713, 715 (Pa. 1974), *cert. denied*, 419 U.S. 1092, 95 S. Ct. 686 (1974)(quotation and citation omitted). Custodial interrogation does not

6

70

require that the police make a formal arrest, nor that the police intend to make an arrest. *Commonwealth v. Medley*, 612 A.2d 430, 433 (Pa. 1992)(quoting *Commonwealth v. Brown*, 375 A.2d 1260, 1264 (Pa. 1977)). Although the circumstances of each case must certainly influence a determination of whether a person is "in custody" for purposes of receiving of *Miranda* protection, the ultimate inquiry is whether there is a formal arrest or restraint on freedom of movement of the degree associated with a formal arrest. *California v. Beheler*, 463 U.S. 1121, 1125, 103 S. Ct. 3517, 77 L. Ed. 2d 12275 (1983)(quotation and citation omitted); *Cooley*, 118 A.3d at 376 (citing *Stansbury v. California*, 511 U.S. 318, 322 (1994)).

Not every restriction of movement imposed on an individual by the police constitutes an arrest. *See, e.g., Berkemer v. McCarthy*, 468 U.S. 420, 104 S. Ct. 3138, 82 L. Ed. 2d 317 (1984)(declining the opportunity to extend *Miranda* protections to typical roadside traffic stops); *Commonwealth v. Carter*, 643 A.2d 61, 67 n. 2 (1994)(noting the Pennsylvania Supreme Court does not hold that an individual has been arrested every time the police place him or her in handcuffs). Courts evaluate whether one is in custody by looking to the totality of the circumstances. Among the factors utilized in determining whether a detention became so coercive as to constitute the functional equivalent of a formal arrest are: the basis for the detention; the duration; the location; whether the individual was transferred against his will, how far, and why; whether restraints were used; the show, threat or use of force; whether the person was the focus of the investigation; and the methods of investigation used to confirm or dispel suspicions. *Commonwealth v. Peters*, 642 A.2d 1126, 1130 (Pa. Super. Ct. 1994)(citations omitted).

The first interview of the Defendant took place outside of the Robbie Way residence inside of Trooper Taylor's police vehicle. Each of the individuals who were there was

7

7c

interviewed in turn. Each person, including the Defendant, consented to the interview being recorded. The Defendant was not handcuffed or restrained in any way prior to or during the interview. There was no threat or show of force made and the Defendant was not transported in any manner. The interview of the Defendant lasted mere minutes. Trooper Taylor, at the time of the interview, did not suspect that he was investigating anything other than an accidental shooting. Based on these facts, the Court finds that the Defendant could not have reasonably believed that his freedom of movement was restrained in any way, let alone to the degree associated with a formal arrest. *Miranda* warnings were not required.

The second interview of the Defendant took place in an interview room at the State Police Barracks. Following investigation of the Robbie Way residence, the troopers asked the individuals who were potential witnesses to the shooting if they would agree to go to the State Police Barracks and if they would travel there separately. Each person, including the Defendant, agreed to do so. The Defendant rode to the State Police Barracks in the front seat of Trooper Taylor's police vehicle. Trooper Taylor was dressed in civilian clothing. The Defendant was not handcuffed during the ride. Once at the State Police Barracks, the Defendant went to an interview room. Trooper Birckbichler then asked the Defendant if he would permit the interview to be recorded. The Defendant agreed. The Defendant was then advised that he was not under arrest and that he was free to leave at any time. The Defendant was interviewed for approximately one hour. He was reminded during the interview that he was free to leave. The evidence does not demonstrate that any show or threat of force was made at any time during this interview or during any of the interviews. Based on these facts, the Court finds that the Defendant was not placed in a situation where he reasonably could have believed that his

8

freedom of movement was restrained to the degree associated with formal arrest. *Miranda* warnings were not required.

The next interview, the second interview of the Defendant at the State Police Barracks, took place after the Defendant was approached by Trooper Taylor in the lobby. Trooper Taylor asked the Defendant if he was willing to again speak to the troopers. The Defendant agreed to do so. The Defendant was at that point advised of his *Miranda* rights. The Defendant acknowledged that he understood those rights. Regarding the *Miranda* waiver, however, the Defendant asked: "So if I sign this, I can't get an attorney?" The Defendant was then informed by the troopers that the Pennsylvania State Police Rights Warning and Waiver form merely informed him of his rights. The Defendant then signed the waiver. He was then interviewed for approximately forty minutes after he was reminded that he was free to leave. With respect to the question of whether or not the Defendant was in custody such that *Miranda* rights were required, the Court finds that the second interview to take place at the State Police Barracks was no different than the first, save that it took place later, during the early morning of April 18, 2014. The Defendant voluntarily agreed to speak to the troopers. He was reminded that he was free to leave. The interview lasted approximately forty minutes. The Defendant was not placed in a situation where he reasonably could have believed that his freedom of movement was restricted to the degree associated with a formal arrest. *Miranda* warnings were not required.

*Miranda* warnings, however, were given to the Defendant. The Defendant indicated that he understood the warnings that were given to him. He asked whether by signing the waiver, he relinquished his right to counsel. The troopers informed him that that was not the case and that the Rights Warning and Waiver form notified the Defendant of his rights. The Defendant then signed the waiver. Once more, the Defendant was reminded that he was free to leave. He then

9

answered the troopers' questions for approximately forty minutes. Thereafter, since the other interviewees had departed, the Defendant was driven home by Trooper Birckbichler. Even if *Miranda* warnings had been required, the Court finds that the Defendant knowingly, intelligently, and voluntarily waived the rights that are the subjects of the *Miranda* warnings.

The Defendant was in custody during the third interview that took place at the State Police Barracks. *Miranda* warnings were required. Prior to the interview, *Miranda* warnings were given to the Defendant. Defendant's Exhibit A demonstrates that Trooper Birckbichler read to the Defendant the Pennsylvania State Police Rights Warning and Waiver form substantially verbatim. The Defendant indicated that he understood the rights that were read to him. In determining whether a defendant's waiver of his *Miranda* rights is valid, a trial court must consider: 1) whether the waiver was voluntary, in the sense that the waiver was not the result of governmental pressure; and 2) whether the waiver was knowing and intelligent, in the sense that it was made with full comprehension of both the nature of the right being abandoned and the consequence of that choice. Factors to be considered in determining whether a waiver is valid and a confession is voluntary include: the duration and means of interrogation; the defendant's physical and psychological state; the conditions attendant to the detention; the attitude exhibited by the police during the interrogation; and any other facts which may serve to drain one's powers of resistance to suggestion and coercion. *Commonwealth v. Patterson*, 91 A.3d 55, 76 (Pa. 2014) *cert. denied sub nom. Patterson v. Pennsylvania*, 135 S. Ct. 1400 (U.S. 2015).

The Court finds that the Defendant waived his *Miranda* rights and that the waiver of his *Miranda* rights was knowingly, intelligently, and voluntarily made. The Defendant had not been detained following the earlier interviews with the state police. After he was taken to the State

10

Police Barracks following his arrest, the Defendant was read *Miranda* warnings by Trooper Birckbichler. The Defendant indicated that he understood his rights. Trooper Birckbichler then read to the Defendant the waiver portion of the Pennsylvania State Police Rights Warning and Waiver form. The Defendant then apparently asked whether he was able to stop the interview in order to get an attorney. Trooper Birckbichler responded by informing the Defendant that he was free to do so. After indicating that he had not been drinking, and after declining the offer of a beverage, the Defendant signed the *Miranda* waiver. After the waiver was signed, the interview of the Defendant proceeds for approximately thirty to forty minutes. At all times during the interview were the troopers courteous and professional. There is nothing contained on the audio recording, submitted as Defendant's Exhibit A, that tends to show the Defendant's statements were anything but voluntarily given. The evidence presented at the suppression hearing likewise did not tend to show that the conditions of detention or the Defendant's psychological state were such that the statements given by him were involuntary. Additionally, the Defendant did not ask for an attorney before or during the interview, nor did he assert his right to remain silent. The Court thus finds that the Defendant provided voluntary statements following a valid knowing and intelligent waiver of his *Miranda* rights.

We finally address the Defendant's argument that he was arrested absent probable cause. The argument is without merit. The Defendant was not in custody prior to the arrest that took place sometime on April 18, 2014. By the time of his arrest, the police were aware that a shooting had taken place that resulted in the death of the victim. Interviews with several individuals indicated that the Defendant had been in possession of the weapon that was fired at the time of the shooting. The Defendant, in his statements to the police at the State Police Barracks, indicated that he retrieved a weapon from a bedroom of the Robbie Way residence and

11

70

was holding it at the time it fired. In order to determine whether probable cause existed, we must consider the totality of the circumstances. Probable cause exists where the facts and circumstances within an officer's knowledge are sufficient to warrant a person of reasonable caution in the belief that an offense has been or is being committed. *E.g., Commonwealth v. Martin*, 101 A.3d 706, 721 (Pa. 2014) *cert. denied sub nom. Martin v. Pennsylvania*, 136 S. Ct. 201 (U.S. 2015). The facts and circumstances within the troopers' knowledge led them to believe that the Defendant had retrieved a weapon from a bedroom of the Robbie Way residence, that the Defendant was holding the weapon when it discharged, and that the discharge resulted in the shooting death of the victim. There was probable cause to arrest the Defendant for homicide.

Accordingly, the Court enters the following:

# IN THE COURT OF COMMON PLEAS OF BUTLER COUNTY, PENNSYLVANIA

COMMONWEALTH OF PENNSYLVANIA

vs.

JEREMY DANIEL SICKENBERGER

CRIMINAL DIVISION

C.A. No. 0805 of 2014

For the Commonwealth: Richard A. Goldinger, Esq., Assistant District Attorney
For the Defendant:     Joseph L. Smith, Esq., Assistant Public Defender

## ORDER OF COURT

AND NOW, this 23rd day of November, 2015, following a hearing on the Defendant's Omnibus Motion, it is ordered that the motion is **denied**.

It is further ordered that this matter is scheduled as follows:

Status Conference on December 14, 2015 at 1:00 P.M. in Courtroom 2;

Call of the List on January 27, 2016 at 9:00 A.M. in Courtroom 2; with

Jury Selection on January 28 & 29, 2016 at 9:00 A.M. in Courtroom 2; and

Trial commencing the week of February 8, 2016 in Courtroom 2.

By the Court,

William R. Shaffer, Judge

2015 NOV 23 A 10: 47
LISA WEILAND LOTZ
CLERK OF COURTS
ENTERED AND FILED
BUTLER COUNTY
COURT OF COMMON PLEAS

*11-23-15*
mcc
icc
da
atty J. Smith
ct adm - fyi - Red stamp (s)

70

13